[Civ. No. 6494. Second Appellate District, Division Two.—January 28, 1931.]

J. F. PAIR et al., Respondents, v. HAMMOND LUMBER COMPANY (a Corporation) et al., Appellants.

George L. Greer for Appellants.

Troy Pace for Respondents.

THOMPSON (IRA F.), J.—This action was brought by the surviving husband and three minor children of Mrs. Elizabeth Pair, for damages for her wrongful death resulting from an automobile collision.

On the tenth day of April, 1928, the deceased was driving a Nash automobile south on Alameda Boulevard near Bennett Street, in the city of Compton; she was accompanied by Cornelia Huffman, whose husband was the owner of the machine. Immediately preceding them on the highway and going in the same direction was an empty truck with a trailer attached, owned by the B. & O. Truck Company; a truck and trailer, both loaded with lumber and owned by the defendant Hammond Lumber Company, was proceeding north on Alameda Boulevard at the same time; Mrs. Pair attempted to pass the B. & O. truck, and just as she was in a position where she could start to turn back on to the right side of the boulevard in front of the B. & O. truck the automobile she was operating was struck by the lumber truck going north, the left front wheel of the Nash automobile having caught on the left front wheel of the lumber truck, causing the Nash automobile to swing around at right angles to the side of the lumber truck. Instantly the B. & O. truck struck the Nash from the side and carried it forward about forty or more feet. Mrs. Huffman and the deceased were both thrown from the automobile and severely injured; they were taken to a hospital, where Mrs. Pair died in the afternoon of the same day. There was conflicting testimony as to the speed of the three vehicles; however an eye-witness testified that none of them was exceeding twenty miles an hour. There was no dispute of this last statement.

The driver of the lumber truck testified that he was watching the Nash automobile from the time it swung out from behind the B. & O. truck; that it was 100 feet or more away from him when it started to turn out to pass the B. & O. truck; that he saw it weaving back and forth in its course; that when he saw the Nash come out from behind the truck, in his opinion "she did not give herself ample room to pass between the two trucks" and that "he thought she was taking a chance"; that his right front wheels were about eighteen inches inside the pavement and his rear wheels about twelve; that there was nothing which would have prevented him from pulling off the pavement to the right of the

road. A map introduced in evidence showed that there was a shoulder of dirt road on his right approximately five and a half feet wide. He further testified that he would not have upset his load if he had turned to the right on the dirt portion of the highway; that he put on his brakes when he saw the Nash automobile weaving, but another witness testified ''The truck traveling north, I don't believe turned either way out of its course; I didn't see him apply the brakes, but I know the truck was slowed down, turned off the highway after hitting the car, so he must have at least applied his foot brakes right after the time; I don't say he put them on before the crash, but I don't believe it was possible.'' There was testimony that the lumber truck was swerving also. A witness named Welch was asked the following questions: ''Q. You saw this big heavy lumber loaded truck coming north and the back of the trailer swinging backwards and forwards? A. Yes. Q. Then you saw a commotion of some kind like there had been an accident and heard the crash? A. Yes.''

A nonsuit was ordered in favor of the defendant the B. & O. Truck Company, but the jury returned a verdict in favor of the plaintiffs and against the Hammond Lumber Company. This appeal is from the judgment rendered pursuant to the verdict.

▉ The sole question for our determination is whether the facts are sufficient to warrant the jury in returning a verdict upon the doctrine of the last clear chance. The court's instruction correctly defined the law thereof and the appellant makes and could make no objection thereto other than to say that the evidence did not warrant the submission of the case to the jury upon that theory.

Undoubtedly, as was admitted in the trial court, the deceased was guilty of negligence when she attempted to pass the B. & O. truck without sufficient time to give her clearance, but after putting herself in that position was it possible for her to escape by the use of ordinary care, and did the driver of appellant's truck realize her dangerous situation and her inability to escape therefrom, and did he have a clear chance to avoid the collision by the exercise of ordinary care, and did he fail in this regard? Upon the answers to these questions hinges the outcome of this appeal. (*Darling* v. *Pacific Elec. R. Co.*, 197 Cal. 702 [242 Pac. 703].)

From our recital of the testimony it cannot be doubted that appellant's driver realized the dangerous situation in which Mrs. Pair had placed herself and the difficulty, if not impossibility, she faced of extricating herself therefrom; nor can we escape the conclusion that the jury was entitled to say that he could have avoided the accident by the exercise of ordinary care (the act of turning slightly to the right), but that he made no attempt to alter his course. That leaves but the single question of whether the deceased could have extricated herself from her predicament by the use of ordinary care. There should be added to the facts the statement that other automobiles were following the B. & O. truck, so that her escape in that direction was very doubtful. The testimony of Mrs. Huffman is capable of the construction that Mrs. Pair had no chance to turn back into her regular line of traffic until just at the moment of the impact. She testified: "It seems like just as we were clearing that one" (truck and trailer) "going south, why, then, we were struck by the one going north"; and again: "As near as I can tell, and as near as it seemed to me that we had just passed, we had passed the truck going south, and had just started to turn back into our own." Also she said: "The last I can remember clearly was that we were just clearing the truck nicely, and the other truck was coming faster than I expected it was coming, and I felt that Mrs. Pair felt the same way, and just why or how it was that truck struck us, I don't know"; and lastly: "The last I do remember was when she was just at this point, seemed to me she was just at the point where she could slip in and clear in front of the truck we were passing, and that was the truck I had my eyes on."

Judgment affirmed.

Works, P. J., and Craig, J., concurred.