[Civ. No. 15986.   Second Dist., Div. Three.   Apr. 5, 1948.]

MARIE HETHERINGTON et al., Appellants, v. CROSS-
    LEY TRANSPORTATION COMPANY (a Corpora-
    tion) et al., Respondents.

Fred O. Reed and Murchison, Myers & Gray for Appellants.

Parker, Stanbury & Reese, Harry D. Parker and Kermit
J. Morgan for Respondents.

SHINN, Acting P. J.—On the 26th day of September, 1944,
at about 5:45 a.m., at a point on U. S. Highway 60, some 13

miles east of the city of Riverside, a Hudson car belonging to appellant, Mary Hetherington, and being operated by her husband, Dr. Albert J. Hetherington, in an easterly direction, collided with a Ford car being driven by one James Keesheen in a westerly direction, the left front portions of the two cars coming into contact. The highway was 28 feet wide, divided by a white line, with shoulders at least 10 feet wide. There was testimony that the Hetherington car came to rest across this line and extended in a southeasterly direction over most of the south half of the paved highway. The Keesheen car came to rest on the north side of the highway facing in a northwesterly direction. The distance between the two cars was estimated at from 5 to 10 feet. A few minutes thereafter, while plaintiffs were still in their car, a truck and trailer of Crossley Transportation Company, driven by its employee, Karber, traveling in an easterly direction, collided with both cars, continued for a considerable distance down and off the highway, where the truck tipped over, caught fire and was demolished. Hetherington and wife sued the Crossley company and Karber for damages and these defendants, in a jury trial, recovered judgment on their cross-complaint against Hetherington and wife. The Hetheringtons appeal.

The questions on appeal are whether there was sufficient evidence that Dr. Hetherington was negligent and whether respondents were guilty of contributory negligence as a matter of law.

Dr. Hetherington testified that his headlights were on and that he saw the approaching Keesheen car when it was about a mile away weaving back and forth across the middle white line; that pretty soon it got onto the south side of the highway and came on toward him; that when the car was nearly upon him, 25 or 50 feet away, on the south half of the highway, he turned his car to the left so that it extended about a foot over the middle line into the north half of the street where his left front fender came in contact with the left front fender of the Keesheen car. The lights of both cars were extinguished by the first accident. Respondent Karber testified that the equipment he was driving was some 60 feet in length, was loaded with fuel oil and weighed approximately 67,000 pounds; that he had been traveling within a mile or so of 40 miles an hour; that his right front bumper hit the Hudson car; that about 250 or 300 feet west of the point of impact he came into a fog bank and in doing so slowed down

his truck to about 35 miles an hour; that the eastern edge of the fog bank was approximately 75 feet from the point of the accident; that he judged the fog was about 50 feet thick but would not call it a dense fog; that at the speed he was going he could have stopped his vehicle in from 150 to 200 feet, and that when he entered the fog bank he could not see that far ahead of him. Karber did not testify at the trial to having seen the Hetherington car before the collision, but it was shown that he had testified in a deposition and at a former trial that when he emerged from the fog bank he saw an object on the highway about 75 or 80 feet in front of him and that he applied his brakes and tried to pull around the two cars. He was rendered unconscious and remained so for some 10 days. Keesheen also was seriously injured. He was called as a witness but was unable to recall any of the immediate circumstances preceding or following the accident.

▮ The case is clearly not one in which we can hold either the implied finding of negligence on the part of Dr. Hetherington or the absence of contributory negligence on the part of Karber to be unsupported by the evidence.

A conclusion of negligence is deducible from the testimony of Dr. Hetherington that the Keesheen car was entirely on the south side of the highway as it approached him and that when it was about 25 or 50 feet away from him he turned to the left in order to allow it to pass to his right. No other witness testified that the Keesheen car was on the wrong side of the highway. Photographs of the front end of the Hudson car show that the right front fender was undamaged. Dr. Hetherington testified that the first collision was a slight one and from this testimony and the fact that he crossed the middle line it could be reasoned that had he not done so the collision would not have occurred.

Moreover, if Dr. Hetherington's account of the accident had been believed it would have furnished additional reasons for a finding of negligence on his part. There was at least a 10-foot shoulder along the south side of the highway for a considerable distance west of the point of collision. A fruit stand was located about 35 feet south of the highway and directly opposite the point of collision. From a point some 50 feet west of the fruit stand the shoulder of the highway gradually broadened from 10 feet to about 35 feet at the fruit stand, and to the east there was an even longer area, equally wide. Dr. Hetherington had a clear opportunity and ample time to drive onto the shoulder so that his car would have been entirely

free of the paved portion of the highway. If, as he testified, he saw the Keesheen car as it traveled the last mile and realized that it was on the south side of the highway, it would have required no sudden decision on his part to move far enough to the right to avoid all danger of being struck. We find in his testimony no account of precautions taken to avoid being hit by the Keesheen car except that he slowed down to 10 miles an hour and turned to the left. The decision of the jury indicates the belief that in the exercise of ordinary care he should have given the oncoming car a wide berth. We are in agreement with the jury on this point.

It is suggested by appellants that even if Dr. Hetherington was negligent his negligence was not a proximate cause of the second collision. Aside from the fact that this was a question for the jury, and the implied finding in favor of cross-complaints on this issue may not be disturbed if it is supported by reasonable inferences, we are of the opinion that it would have been difficult for the jury to have reached a different conclusion. The blocking of the highway as the result of the first accident was the immediate cause of the second one, unless negligence of Karber was proved to have been the sole proximate cause of the collision.

We must assume that the jury believed the testimony of Karber that he drove through a fog bank which obscured his vision, saw no objects ahead of him on the highway until he was within 75 or 80 feet of the stationary cars, and endeavored in this emergency to pass between them. It is argued that he could have turned to the right off the highway, but his failure to do so does not by any means carry the weight as evidence of negligence that is attributable to the failure of Dr. Hetherington to turn to the right, or off the highway. Karber's decision to try to pass between the two cars was formed in an emergency, whereas, Dr. Hetherington had sufficient time for reflection and the exercise of deliberate judgment. The verdict reflects a correct understanding of the rule applicable to these facts under which greater responsibility rested upon Dr. Hetherington than upon Karber. While there was testimony estimating the speed of the truck as high as 50 miles per hour, Karber testified that when he struck the fog bank he slowed down to 35 miles per hour, and this speed was not an unlawful speed under section 515 of the Vehicle Code, nor a negligent speed as a matter of law. While there was testimony to the effect that the night was sufficiently clear to enable witnesses to see the truck while it was still approxi-

mately a mile to the west of the point of collision, it is to be presumed that the jury believed that Karber encountered a fog bank as he testified. It is quite obvious that it would have required a heavy fog to blot out the headlights of the approaching truck, whereas, a considerably less amount could have rendered obscure stationary and unlighted objects on the highway. An officer of the state highway patrol, who drove east from Riverside to the scene of the accident, a distance of some 13 miles, testified that he drove through a number of fog banks that were from 300 to 400 feet wide. Karber also testified that he had stopped his truck that morning near Pomona, pulled off the road and had slept for some two hours, because of a heavy fog which made driving too difficult.

Upon the evidence which we have outlined, the conclusions of the jury upon the issues of negligence and contributory negligence are conclusive upon the appeal.

The judgment is affirmed.

Wood, J., and Vallée, J. pro tem., concurred.