[Civ. No. 9046.    Third Dist.    Aug. 16, 1957.]

SUSAN SCHUMACHER, a Minor, etc., et al., Respondents, v. BEDFORD TRUCK LINES et al., Appellants.

Rich, Fuidge & Dawson for Appellants.

Melvin M. Belli, Al B. Broyer and Prince A. Hawkins for Respondents.

SCHOTTKY, J.—This is an appeal by defendants from a judgment entered upon a jury verdict, from an order denying a motion for judgment notwithstanding the verdict, and from an order denying a motion for a new trial. The action arose out of a collision between defendants' truck and an automobile in which Susan Schumacher, age 6, was riding. The jury awarded the child $50,000 for her injuries and $10,000 to her father for special damages.

Appellants' principal contentions are that the evidence is insufficient to prove any negligence on the part of defendants and that the jury was improperly instructed. Before discus-

sing these contentions we shall give a brief summary of the evidence as shown by the record.

Susan Schumacher was riding in a car driven by Mrs. Betty F. Sherman. About 6:30 p. m. on August 9, 1952, the Sherman car was proceeding westerly on a slight down grade on Highway 40 in Placer County a few miles east of Rainbow Lodge at about 44 miles per hour. Defendants' driver, Perkins, was driving a truck, consisting of a tractor and semitrailer, in an easterly direction toward Donner Summit at between 18 and 20 miles per hour. Behind the truck there was a vehicle driven by one Cromwell, and behind Cromwell was a vehicle driven by one Garcia.

The road at the point of the impact was a paved, two lane highway, the eastbound lane being 12.3 feet wide and the westbound lane being 11 feet wide. The road was straight, but easterly from the point of impact some 400 feet the road turns northerly and disappears behind a rock cut. The shoulder on the south side of the road, approximately 100 feet west of the accident, was 3½ feet wide and widens to varying widths and into a turnout to a side dirt road.

Perkins looked behind, using his outside rear-view mirror, and saw a car (Garcia's) come out to pass. He looked ahead and saw a car (Mrs. Sherman's) come around the bend. He looked behind again and saw the car still trying to pass. It was out into the oncoming lane and about opposite his rear. He looked ahead and saw Mrs. Sherman still coming. Perkins continued to drive the truck in its own lane of travel. Perkins saw Mrs. Sherman when she was 500 to 600 feet away from him. This is his estimate, confirmed by Mrs. Sherman's measurement and by visibility tests by a civil engineer. He had already seen Garcia come out to pass when he saw Mrs. Sherman.

Mrs. Sherman applied her brakes and turned to her right onto the shoulder. Garcia also turned to the same shoulder. Mrs. Sherman then pulled back onto the road from the shoulder. The Garcia car continued off the shoulder and off the left side (north) of the road and stopped. Then Mrs. Sherman, with brakes on, attempted to go between the truck and the Garcia car. She testified it looked to her as if there was sufficient room to pass between the Garcia car and the truck. She passed most of the truck but struck the rear end of the truck on the side of the truck near the rear wheels.

She believed her car to be under complete control at all times.

The Highway Patrol found two continuous skid marks at the scene of the accident 97 feet long, apparently from the Sherman car, starting on the northerly shoulder of the road, running diagonally east to west to the point of impact. The point of impact was established as being 3 feet, 8 inches on the south side of the white line in the truck's lane of travel. Another 6-foot skid mark was connected to the easterly end of the 97 feet of skid marks by 16 to 36 feet of tire marks on the north shoulder. The Garcia car was stopped opposite the point of impact, the nearest portion of the Garcia car being 13 feet, 6 inches north of the center line of the road.

Cromwell stated in his deposition that as Garcia's car came up to him he slowed his car from 20 miles per hour to 10 miles per hour to allow Garcia's car to get between him and the truck. Cromwell saw the Sherman car coming and stopped his car with approximately one-third to one-half of the vehicle being off the road, which was as far off as he could get. He estimated that from seven to ten seconds elapsed from the time he first saw the Sherman car appear around the rock cut and the accident. He stated that at the time of the impact there was sufficient room for the Sherman vehicle to pass between the Garcia car and the truck. He stated further that if the Sherman car had missed the truck it would have hit his own car or perhaps gone between his car and the truck.

Perkins testified that he thought at all times until the Sherman car was even with his cab that it would go between his truck and the Garcia car which was taking to the shoulder on the north side of the road. As the Sherman car went by the cab of the truck Perkins first became aware of the fact it was out of control and was likely to collide with the truck.

William M. Dalton, a truck driver, testified that at the plaintiffs' request he drove a substantially similar tractor and semitrailer with the same weight load at 20 miles per hour over the same area for the purpose of determining whether there was sufficient space to drive the truck completely off the paved portion of the highway when passing the place where the collision occurred. He made nine runs, and went completely off the highway around the point of impact on

each, either stopping on the turnout or continuing through and back onto the paved portion without diminishing his 20 miles per hour speed.

Other evidence will be referred to in the course of this opinion.

Appellants contend most earnestly that the record is entirely lacking in proof that Perkins was negligent and that as a matter of law appellants were entitled to a nonsuit or a directed verdict. They contend that the acts of Perkins were not the proximate cause of the accident, but that the proximate cause was the acts of Garcia and Mrs. Sherman. Respondents in reply contend that there was sufficient evidence from which the jury could have found that Perkins was negligent and that his negligence was a concurrent proximate cause of the accident.

Appellants contend that to apply the doctrine of duty to avoid an accident there must be two elements present which, appellants assert, are missing in the facts in the case at bar: (1) Defendants' driver must have time and ability to avoid the accident; (2) there must be proof of facts which would alert an ordinarily prudent driver that an accident was imminent. These facts must be apparent to the driver in time to allow him to do something about the impending collision. Appellants state that all of the witnesses who viewed the accident, including Mrs. Sherman, saw that there was sufficient room for Mrs. Sherman to keep her car on her own side of the road and pass between the truck and the Garcia vehicle. Appellants maintain that before the duty to avoid a collison arises, there must be sufficient evidence to indicate that a collision is imminent and the jury had absolutely no evidence to warrant this conclusion that a collision would occur.

Appellants assert further that not only did Perkins have no reason to believe that an accident would occur, but even if he had, there was not time to avert it. From the time the Sherman car first appeared approximately 550 feet away to the time of the accident, about seven seconds elapsed. The two vehicles were approaching at a combined speed of at least 62 miles per hour or about 88 feet per second. After observing the Sherman car Perkins shifted his vision to the rear-view mirror to see if the Garcia car had attempted to cut in behind him, but Garcia was still some place just behind the rear wheels in the wrong lane. At this time it would be totally erroneous and poor judgment for the truck driver

to attempt to stop or slam on his brakes as this would cause the interval between the truck and the car immediately behind the truck to become so small Garcia could not get into the space. After ascertaining that Garcia was still attempting to pass, Perkins looked again to the front to see where the Sherman vehicle was located. The rear wheels of the Sherman car were leaving the north edge of the pavement and immediately came back upon the road, and the gap between the car and truck had closed to 185 feet at this point. Appellants argue that since the Sherman car came back on the highway and proceeded down its side of the highway and the Garcia car was leaving the roadway, leaving the westbound pavement free and clear for the Sherman car's travel, there was no cause for alarm until the Sherman car flashed by the cab of the truck and then Perkins could see that the path of the vehicle was going to take it into the side of the truck. For the first time he became aware that the Sherman car was out of control and it was impossible to react in a fraction of a second to avoid the accident.

Appellants urge further that if it is assumed that Perkins should have anticipated an accident at some earlier time, the earliest point at which Perkins could have all of the cars located was when there was the gap of 185 feet as mentioned above. At the rate of 88 feet per second mentioned above, it would take only a fraction over two seconds for the accident to occur. Driving the heavy rig, it is doubtful, given a reasonable allowance for reaction time, that he could more than barely turn the wheel in this short time. In any event, since the truck was almost 50 feet long and the rear wheels of the trailer would follow the track of the front wheels and in a matter of two seconds only the fore portion of the truck could have started off the road, the rear portion of the truck would have been no farther off the road than if he had not made a turn. Furthermore, since reaction time alone would take possibly the full two seconds, it would have been useless for Perkins to attempt to stop the truck in this amount of time when it is considered that the point of impact would only have been placed slightly more forward of the truck.

In support of the foregoing contention appellants rely strongly on two cases, *Woloszynowski* v. *New York Central Ry. Co.*, 254 N.Y. 206 [172 N.E. 471], and *Sanford* v. *Grady*, 1 Cal.App.2d 365 [36 P.2d 652, 37 P.2d 475].

In the Woloszynowski case the doctrine of last clear chance was applied. Appellants state that the present case was not

tried upon that theory, but the doctrine is much the same as the doctrine of negligence for failure to avoid an accident. In the Woloszynowski case a judgment for the plaintiff boy was reversed on appeal. The boy was standing on the side of the railroad right-of-way within the overhang of the engine and had put himself in this position of peril after the lowering of the gates for the train to pass. The court said at page 472 [172 N.E.]:

"In the case at hand there is no reasonable basis for a finding that the boy was seen until he was within 160 to 200 feet of the defendant's engine. . . . The argument for the plaintiff is that in such an emergency the fireman and brakeman, instead of shouting to another, should have jumped across the cab and applied the brakes themselves, with the saving of some precious seconds. Probably such a course would have been wiser than the one followed, though it would have involved the assumption of duties which in the business of railroading are committed to the engineer alone. At most, however, there was an error of judgment in an emergency so sudden and immediate that seconds made a difference. [Citations.]".

In the Sanford case the plaintiffs' deceased was a passenger in a car which pulled out to pass a truck and hit the car of defendants Grady headon. A judgment against the defendants Grady was reversed on appeal. The court stated at page 372:

". . . We are unable to find any act or omission on the part of Mrs. Grady which is contrary to that which might be expected of a reasonably prudent person under like circumstances. No such act or omission is suggested by the respondents. She was ascending the highway to the crest of a grade at a very moderate rate of speed. She was on her proper side of the highway. She had a right to assume that an approaching machine would not deliberately drive upon her side of the highway in violation of section 124 of the California Vehicle Act. When she reached the top grade and caught sight of the approaching Plymouth car within 200 feet distance traveling out upon the dirt shoulder and coming toward her at an excessive rate of speed, as a reasonable person, she had a right to assume that the driver of that car would observe the impossibility of passing the rapidly moving truck, and that he would drop back behind that vehicle. After reaching her position at the top of the grade, where she first saw the approaching machine about 200 feet

away, less than two seconds of time elapsed before the collision occurred. The moment that she realized the serious predicament in which she was placed and that the driver of the Plymouth car persisted in coming onward at a high rate of speed, she applied her brakes, but was unable to avert the collision.''

Appellants contend that the case at bar is clearer than the facts in the *Sanford* v. *Grady* case, because here the approaching vehicles were not even in the same lane of travel and there was no reason to anticipate an accident.

Respondents in reply contend that the jury's implied finding that Perkins failed to use ordinary care to avoid the accident is in accordance with the evidence. They maintain that Perkins was aware that an accident was about to happen, or at least he was aware of facts from which any reasonable person would know that there was grave danger of an imminent accident at the time that he first saw the Sherman car come around the bend. At a distance of from 500 to 600 feet Perkins had about seven seconds to react. That Perkins had sufficient time within which to act is demonstrated by the things that the other people were able to do during that time while Perkins did nothing. He could have and should have driven off onto the shoulder and along the turnout, giving Mrs. Sherman room to drive through. They argue that if Perkins did not realize an accident was imminent until Mrs. Sherman flashed by his cab, he negligently misjudged the situation. Alternatively the jury may have disbelieved his testimony to that effect. They may have concluded that he lied when he said he did not think there would be an accident, in an attempt to cover up his negligence.

Respondents further attack appellants' computation of two seconds and 185 feet of gap between the vehicles at the time Mrs. Sherman turned to her right and then turned back on the highway. They state that it is more like four or five seconds and 275 to 300 feet.

Respondents rely strongly on the rule that it is the duty of every person using a public highway to exercise ordinary care at all times to avoid placing himself or others in danger and to exercise ordinary care at all times to avoid a collision. They quote from 47 American Law Reports 2d 120 as follows:

''It has been generally recognized that a driver who, while proceeding on his proper side of the road, is confronted with another vehicle approaching from the opposite direction on the wrong side of the road, is under a duty of exercising

ordinary care 'under the circumstances' in avoiding the impending collision, and that his failure to do so, if it proximately causes injury or damage to himself or others, may be regarded as negligence or contributory negligence.''

Respondents cite *Kindscher* v. *Dyer,* 78 Cal.App.2d 323 [177 P.2d 782], in which the court held that in an action for damages arising out of a collision of plaintiff's truck and the defendant's semitruck and trailer, the appellate court could not, as a matter of law, hold that there was not sufficient evidence to support the trial court's finding that plaintiff was guilty of contributory negligence where it appeared that, at dawn and on a wide highway the plaintiff failed to observe a truck passing an overtaken vehicle, and failed to avail himself of the opportunity to avoid a collision with it by turning to the right and traveling on the right hand shoulder of the highway. The court said at page 327:

''. . . The trial court, of course, had the right to disregard plaintiff's testimony and believe other testimony and defendant's argument to the effect that plaintiff had traveled a long distance at night; that he was no doubt tired and sleepy and was in a hurry to get his bees in Redlands before the heat of the day set in and that he was guilty of contributory negligence in not seeing or observing defendants' truck in the position indicated and also that he failed to slow up or avoid a collision by not turning his truck to his right and traveling on the right-hand shoulder in passing the two oncoming trucks when a clear way was open to him to do so.''

In *Pair* v. *Hammond Lbr. Co.,* 111 Cal.App. 426 [295 P. 581], also cited by respondents, a truck driver's negligence was predicated on his failure to yield and take to his shoulder on the right to avoid colliding with an oncoming vehicle passing a truck. The court stated: ''. . . nor can we escape the conclusion that the jury was entitled to say that he could have avoided the accident by the exercise of ordinary care (the act of turning slightly to the right) but that he made no attempt to alter his course.'' See also *Hetherington* v. *Crossly Transp. Co.,* 84 Cal.App.2d 722 [191 P.2d 463].

We do not believe that it can be held that the implied finding of the jury that Perkins failed to use ordinary care is unsupported by the record. The cases so strongly relied on by appellants, properly analyzed, neither compel nor justify such a conclusion. In the case of *Woloszynowski* v. *New York Central Ry. Co., supra,* the boy who was struck by the train was standing on the side of the railroad right-of-way within

the overhang of the engine, a position in which he had put himself after the lowering of the gates for the train to pass. Upon the trial the doctrine of last clear chance was applied, but on appeal the judgment in favor of the boy was reversed, the court stating that "there was no reasonable basis for a finding that the boy was seen until he was within 160 to 200 feet of the engine."

The case of *Sanford* v. *Grady, supra,* which appellants state is directly in point, is also clearly distinguishable on its facts, as is evident from the following quotation from page 369:

". ... There is substantial evidence that in passing the truck, the rear wheels of the Plymouth car skidded out upon the dirt shoulder and occupied a position making it impossible for the Chrysler machine to pass his car, even by running out to the extreme edge of the highway."

It is clear that in the Sanford case there was no basis for any finding that Mrs. Grady could by the exercise of ordinary care have avoided the collision, but in the instant case there is evidence which would support a finding that Perkins could have driven off onto the shoulder and given Mrs. Sherman room to drive through.

While it must be conceded that the preponderance of the evidence indicates that Perkins was not negligent, yet, bearing in mind the well settled limitations upon an appellate court in weighing evidence upon appeal, we cannot hold that the record will not support a finding that Perkins did not exercise ordinary care and that his failure to do so was negligence which contributed to the injuries of respondent, Susan Schumacher. We are fortified in this belief by the fact that the instant case was presided over by an able and experienced trial judge, who had the power to weigh the evidence, and who, after full hearing, denied appellants' motions for a new trial and for judgment notwithstanding the verdict.

Appellants attack a number of instructions given by the court and contend that even if there was a question of fact for the jury as to the negligence of Perkins, they are entitled to a reversal of the judgment because the jury was improperly instructed.

The first instruction attacked by appellants reads:

"You are instructed that plaintiffs do not have to prove their case to a moral certainty or beyond a reasonable doubt. That is the rule in criminal cases only. This is a civil case, as distinguished from a criminal case, and less proof is required. A mere preponderance of the evidence is all that

is needed for you to find a verdict in favor of the plaintiffs. By the term 'preponderance,' I mean the greater weight of evidence, or that evidence which to you has the more convincing force and effect. If the 'probability' of truth favors a party, he has carried his burden of proof. So while the burden of proof in this case is upon the plaintiffs to sustain the allegations of their complaint by a preponderance of the evidence, it is not required that the plaintiffs produce proof which convinces you beyond a doubt, or beyond a reasonable doubt, or which demonstrates the correctness of the allegations of their complaint, as this degree of proof is rarely available.''

Appellants object to the words ''A *mere* preponderance of the evidence is all that is needed.'' They state that by describing preponderance in a tone of disparagement there is conveyed to the jury the idea that the rule requiring the plaintiffs to prove their case by a preponderance of the evidence is of no importance and that the court itself places little weight or reliance upon the rule.

Appellants cite no California case in support of this contention but cite a number of cases from other states which they claim support their contention. However, we do not believe that these cases, properly analyzed, support appellants' contention, nor do we believe that the instruction, taken as a whole, is erroneous. And, as pointed out by respondents, in the instant case the court explained at length plaintiffs' burden of proof, giving all of defendants' requested instructions (Nos. 10, 7, 22, 30 and 31), and in defendants' instruction Number 30 the words ''fair preponderance'' are used. Appellants have cited two cases from other jurisdictions to the effect that a charge that the plaintiff must satisfy the jury by a fair preponderance of the evidence is erroneous.

In *People* v. *Miller,* 171 Cal. 649, the court said at page 658 [154 P. 468]:

'' 'But in many cases of a civil nature, where the right is dubious, and the claims of the contesting parties are supported by evidence nearly equipoised, a mere preponderance of evidence on either side may be sufficient to turn the scale.' ''

In *Neudeck* v. *Vestal,* 117 Cal.App. 266, it is stated at page 269 [3 P.2d 595] that ''in a civil action the plaintiff is entitled to a verdict whenever the evidence preponderates in his favor, no matter how slight such preponderance may be; . . .''

■ All that a party is required to do is to prove his case by a preponderance of the evidence. ■ While the word "mere" is perhaps unnecessary and could well be omitted, we do not believe it can be held to be erroneous, because a mere preponderance is still a preponderance and in a closely balanced case a mere preponderance might easily tip the scales. In fact, we believe that the words "mere preponderance" are less objectionable than the words "fair preponderance" in the instruction given by the court at the request of appellants.

Appellants next complain as to the giving of the following plaintiffs' instruction:

"You are instructed that the law of California provides that a highway consists both of the roadway, or the improved portion, what we sometimes call the macadam or asphalt, and, in addition thereto, that portion called the shoulder. In other words, 'highway' is both shoulder, unimproved portion, plus the improved or other portion."

■ Appellants do not contend that the definition is incorrect but feel that it should not have been given because in conjunction with the defendants' requested instruction about driving close to the right-hand edge there is prejudicial error. That instruction is as follows:

. "Vehicle Code Section 525.1 provides in part as follows: 'Upon all highways any vehicle proceeding at less than the normal speed of traffic thereon shall be driven in the right hand lane for traffic or as close as practicable to the right hand edge or curb.' "

Appellants argue that reading the two instructions together the jury would believe that the truck should have been driven near the right hand edge of the shoulder.

We agree with respondents that these widely separated instructions, 22 pages apart in the transcript, are in themselves proper and not misleading. Respondents point out that the first is a necessary explanation of terms repeatedly used in the trial. The second so obviously refers to the right-hand edge of the pavement, or ordinarily traveled portion of the highway, that it could not be misconstrued by the jury. In *Casalegno* v. *Leonard*, 40 Cal.App.2d 575, 581 [105 P.2d 125], the court stated:

". . . An examination of the instructions shows that the court in one instance used the word 'highway' instead of 'roadway.' As used in the Vehicle Code, 'highway' and 'roadway' are not synonymous. [Citations.] At times the dis-

tinction becomes important, but we are not convinced that the jury in this case understood from the instructions given that it was the duty of the defendant minor to drive his car on the right-hand edge of the road; that is, on the shoulder thereof. Such duty is imposed under certain conditions not necessary to mention here. It must be assumed that the jurors were persons of ordinary intelligence and that they were not misled by the misuse of the word 'highway.' "

■ Appellants next complain of Plaintiffs' Instruction Number 36 which reads as follows, with the portion particularly objected to italicized:

"If you find that L. W. Perkins knew that plaintiffs were in a position of peril in time to avoid injuring them by exercise of ordinary care by means reasonably within the control of said L. W. Perkins, *then I instruct you that it was his duty to use ordinary care to do so and that a failure so to do is negligence.*"

Appellants contend that the use of the words "it was his duty to use ordinary care" "to do so" refer to the words "to avoid injuring them." The instruction then goes on to state "and that a failure so to do is negligence." The words "to do so" and "so to do" both seem to refer to the same thing; that is, they both refer to the defendants' duty to avoid an accident and the instruction is a direct admonition to the jury that should the defendants fail to avoid the accident they are negligent.

Respondents maintain that the instruction does not say what appellants urge. It says that a failure to use ordinary care to avoid injury is negligence. The ending phrase, "a failure so to do is negligence," refers grammatically to the phrase immediately preceding it, the "duty to use ordinary care." Throughout the instructions Perkins' duty is stated as a duty to exercise ordinary care. The jury was instructed that the fact of an accident does not imply negligence and that if they found that the accident occurred as the result of negligence of persons not parties to the action, or from unavoidable accident, then their verdict must be for defendants. They could not, either by standards of grammatical construction, or consonant with the other instructions given, have construed this instruction as requiring a finding of negligence from a failure to avoid injury, as contrasted with a failure to use ordinary care.

Appellants complain of a number of other instructions given by the court. We have examined these instructions

carefully and are satisfied that they correctly state the law, and that appellants' criticism of them is not well founded. Furthermore, we have read all of the instructions given by the trial court and are convinced that the jury was fully and correctly instructed and that the instructions as a whole are singularly free from error. We deem it unnecessary to unduly prolong this opinion by discussing them in detail.

The judgment and the order are affirmed.

Van Dyke, P. J., and Peek, J., concurred.