[Civ. No. 6472. Fourth Dist. Aug. 22, 1961.]

HERMAN BENJAMIN ROBINSON, Appellant, v. GARY
LEE HARRINGTON et al., Respondents.

Umann, Olan & Marks and Burton Marks for Appellant.

Higgs, Fletcher & Mack, H. Pitts Mack and Edward M. Wright for Respondents.

SHEPARD, J.—This is an appeal by plaintiff from a judgment for defendants in a damage action arising out of an automobile collision. The appeal has been taken on a settled engrossed statement, under rule 7(a), Rules on Appeal, which includes only a brief reference to the purpose of the action as pleaded; the transcript of testimony of each of the automobile drivers involved; plaintiff's Exhibits 1 through 5, consisting of photographs of the scene and of the cars involved, 6A, 6B and 7; and defendants' Exhibits A to J, inclusive, consisting of X-ray photo negatives, hospital records, and income tax return; recital of stipulation of parties that plaintiff suffered some injury, that defense verdict was not based on lack of injury, and that no witnesses testified how the accident happened except the two drivers; a stipulation that appeal may proceed on the settled engrossed statement, the partial clerk's transcript and reporter's transcript, photographs and diagrams; a stipulation that the instructions shown in the reporter's transcript were the sole instructions given by the trial court; that "It is plaintiff's and appellant's sole contention on this appeal, based upon the record herein contained, that there was no evidence presented to the jury sufficient to sustain the jury's verdict for defendants and that the defense verdict and the judgment entered thereon was erroneous as a matter of law."

Apparently there was in the trial court some proceeding in which affidavits were filed by plaintiff and which were ordered stricken, because the notice of appeal names such an order as being appealed from. However, such order is not otherwise referred to in the transcript of the trial court proceedings, nor is it presented in appellant's brief. We must

therefore assume that the portion of the appeal relating to an order made after judgment granting defendants' motion to strike the affidavits of Bennett Olan and Arthur Lewis has been abandoned and will be dismissed. (Rules 7(a) and 17(a), Rules on Appeal.)

No copy of the pleadings, nor of instructions not given, are included. No criticism is made by either party of the instructions as given. We must therefore assume, for the purposes of this appeal, that plaintiff's cause of action and all applicable defenses were properly pleaded and that there was no error in instructions given.

### Basic Issue

By the settled engrossed statement on appeal, the issue on appeal has been restricted to the question of sufficiency of the evidence to support the verdict and judgment. Plaintiff-appellant, in his closing brief, further limits the issue by the statement: "The issue presented by appellant in this case was whether or not there was evidence of contributory negligence on the part of plaintiff to sustain the defense verdict."

### Facts

In general substance, the facts which bear on the issue presented by the appeal, as shown by the record before us, are as follows:

At 2 or 2:30 o'clock on the afternoon of Sunday, April 7, 1957, plaintiff was driving easterly on Highway 94, coming out of downtown San Diego enroute to his home on College Avenue. The day was dry and clear. He turned into the one-way exit ramp which would lead him to College Avenue. The ramp was constructed in a long, slow curve. He said that when he entered the ramp he slowed down from the highway traffic speed to approximately 30 to 35 miles per hour, and that this was the speed of both cars; that he first saw defendants' car at a distance of approximately 100 to 120 feet away, approaching him from the wrong direction on the ramp; that there did not appear to be room to go around defendants' car; that plaintiff immediately put his brakes on; that plaintiff's car did not follow the curve of the ramp, but proceeded straight ahead until it struck defendants' car; that defendant driver did not appear to slow his speed; that plaintiff had slowed to about 5 miles per hour when the two cars collided, the point of contact being the left front of plaintiff's car striking the left front of defendants' car head on.

Defendant Gary Lee Harrington, driver of defendants' car,

testified that he also was on his way home and was attempting to reach College Avenue; that he saw a sign "College Avenue," became confused, did not see the "Do Not Enter" sign at the end of the ramp, and entered the ramp the wrong way; that the ramp was empty when he entered it; that when he first saw plaintiff's car he believed it to be farther west than the point identified by plaintiff as to where plaintiff first saw defendants' car, but defendant driver would not estimate the distance; that immediately upon sighting plaintiff's car, defendant driver pulled his car up against his right-hand curb and stopped; that he was at a full stop two or three seconds before the impact; that plaintiff's car at the time defendant driver first sighted it was traveling about 50 miles per hour; that the force of the collision impelled defendants' car backwards in a curve to the southeast, completely across the ramp, leaving the curved skid marks shown on the photograph (appellant's Exhibit No. 1) from the point of impact to the point where defendants' car came to rest.

The photographs put in evidence by plaintiff show that the left front of each car was severely damaged, the left front fender of each car being crushed back over the top of each left front wheel, the left front bumper of plaintiff's car being crushed back against the front of the wheel, the left portion of the grillwork of each car being severely bent, and the left portion of the hood of each car being crushed sharply upward.

Plaintiff believes his car stopped at about the point of impact, and the photographs do not clearly show to the contrary, although a white mark on the pavement under the left side of his car indicates that plaintiff's car may possibly have proceeded 5 or 6 feet after collision. Apparently no one took the trouble to accurately measure anything. Thus distances must be estimated from the photographs. This is difficult, at best. Plaintiff's Exhibit 5 indicates that plaintiff's left front wheel stopped about 3 or 4 feet from the curb at which defendant driver originally stopped his car. Considering the evidence as to point of impact, this also suggests that plaintiff's car continued forward and to its left a few feet after collision. A dark mark on the pavement, labeled "C," was identified as near the point of impact. The skid marks extending westerly from said "C," were identified as having been made by plaintiff's tires. From the photograph they appear to be 30 or 40 feet long. The distance traveled by defendants' car from the point where defendant driver first saw plaintiff's car to the point where defendants' car stopped,

appears to be 25 or 30 feet. No skid marks indicate a locking of brakes over that area.

Looking at plaintiff's Exhibit 1 through the eyes of the jury, with no exact measurements given by anyone, it is not unreasonable to believe that both drivers could have seen each other at least 400 feet away. It is also apparent from the same Exhibit that the jury could reasonably have estimated that at the point where the two cars approached each other there was ample room for three cars to be abreast of each other from the northerly curb to the southerly edge of the apron. The northerly curb, against which defendants' car was stopped, appears to rise within a few degrees of perpendicular and to be 6 to 8 inches in height. The shallow gutterway on the southerly portion of the ramp, which was on plaintiff's right-hand side, appears to offer no real impediment to travel.

Defendant driver several times testified that he could not estimate the speed of plaintiff's car when he first saw it. Under pressure of repetitive questioning by plaintiff's counsel, he finally stated the speed of plaintiff was much more than 35 miles per hour. Under further questioning he stated that it might have been 50 miles per hour. Under further pressure of cross-examination he said he could not pin it down to such an exact speed as 48.5 miles per hour. Plaintiff's counsel also elicited on cross-examination from defendant driver that this was a 35-mile zone. No objection was made to this by either counsel.

## NEGLIGENCE OF DEFENDANTS

Plaintiff first contends that defendants were negligent as a matter of law, and that such negligence was the sole proximate cause of the accident. Defendants freely concede their own negligence. It is not made an issue anywhere in the trial or in defendants' brief. Thus, no authorities need be examined or discussed on the subject of defendants' negligence. On the contention that it was the sole cause of the accident, however, the question of whether or not the jury might reasonably have concluded that plaintiff's negligence was also a contributing cause of the accident will be discussed later.

## CONTRIBUTORY NEGLIGENCE

It must be remembered that on appeal the evidence must be viewed by this Court in the light of the oft-repeated rule set forth in *Brewer* v. *Simpson*, 53 Cal.2d 567, 583 [1-3] [2 Cal.Rptr. 609, 349 P.2d 289], giving to the respondent on

an appeal the benefit of the most favorable view of the evidence and inferences which could reasonably have been taken by the jury. Viewing the evidence in this light, it is quite clear from the combined factors of testimony as to plaintiff's speed, estimate of skid marks, the distance defendants' car was propelled backwards by the impact, and the severity of car damage, the jurors could reasonably have believed that plaintiff's car at the time of impact was traveling at a speed far faster than the 5 miles per hour stated by him, and that at the time plaintiff first sighted defendants' car, plaintiff was traveling at a speed far in excess of 35 miles per hour; that the speed was in excess of that which a person of ordinary prudence would have driven under like circumstances; that plaintiff at the time he entered the ramp was not only traveling faster than was reasonable and prudent under the circumstances but also that he was not then exercising the vigilance which would have been exercised by a reasonable and prudent man under like conditions. They were also entitled to believe that defendants' car was, in fact, fully stopped at the point of impact, in a position as close to the northerly curb as it could get, and that it could not have mounted over the curb at the angle in which it was stopped. They might also have reasonably believed that there was more than ample room for plaintiff to have passed defendants' car without any difficulty whatever, had he been reasonably vigilant to see defendants' car when it could have been seen. They might also have believed that merely by following the curve of the ramp plaintiff would not have touched defendants' car. Furthermore, from plaintiff's statement that he put on his brakes immediately upon seeing defendants' car, and from the estimated length of plaintiff's brake marks as shown in plaintiff's Exhibit 1, they might have believed that the point at which plaintiff first saw defendants' car was far shorter than claimed by plaintiff.

 It is well settled that contributory negligence is normally a question of fact for the trial court or jury. (*Loftus* v. *Pacific Electric Ry Co.*, 166 Cal.464, 467 [137 P. 34]; *Callahan* v. *Gray*, 44 Cal.2d 107, 111 [2, 3] [279 P.2d 963]; *Hudson* v. *Rainville*, 46 Cal.2d 474, 477 [1-2] [297 P.2d 434]; *Florez* v. *Groom Development Co.*, 53 Cal.2d 347, 357 [3c] [1 Cal.Rptr. 840, 348 P.2d 200].) Contributory negligence on the part of an injured plaintiff, which negligence proximately contributes to the injury complained of, is a valid defense, and this applies whether or not defendant's

negligence was also a proximate contributing cause of the injury. (Civ. Code, § 1714; *Buckley* v. *Chadwick,* 45 Cal.2d 183, 193 [11a-12] [288 P.2d 12, 289 P.2d 242] ; *Dicken* v. *Souther,* 59 Cal.App.2d 203, 208 [3] [138 P.2d 408]; *Scott* v. *Nevis,* 120 Cal.App.2d 619, 623 [4] [261 P.2d 797] ; *Cervantes* v. *Maco Gas Co.,* 177 Cal.App.2d 246, 250 [1] [2 Cal.Rptr. 75].)

▪▪▪ Thus, assuming that the jury believed defendants' negligence was a contributing cause or one cause of the accident, the fact that defendants were negligent is not the final answer to the problem, as plaintiff himself recognizes. If plaintiff, by the exercise of ordinary care and vigilance, could reasonably have avoided the accident, his failure to exercise such care would be negligence. If such negligence proximately contributed to the happening of the accident, plaintiff cannot recover. As above pointed out, the conclusion is inescapable that the jurors, under their prerogative of weighing both the credibility and inferences to be reasonably drawn from the evidence, could, as men and women of ordinary reason, have concluded from several different standpoints that in spite of defendants' negligence, plaintiff was also negligent and that such negligence proximately contributed to the happening of the accident. (*Pair* v. *Hammond Lbr. Co.,* 111 Cal.App. 426, 429 [295 P. 581] ; *Kindscher* v. *Dyer,* 78 Cal.App.2d 323, 327-328 [1, 2] [177 P.2d 782] ; *Hetherington* v. *Crossley Transportation* Co., 84 Cal.App.2d 722, 724-725 [1, 2] [191 P.2d 463] ; *Scott* v. *Nevis, supra;* *Schumacher* v. *Bedford Truck Lines,* 153 Cal.App.2d 287, 296 [1] [314 P.2d 485].)

LAST CLEAR CHANCE AND IMMINENT PERIL

▪▪▪ Plaintiff suggests the problem of imminent peril, and that an instruction should have been given thereon. By the statement of the ground of appeal as contained in the settled engrossed statement, he has foreclosed any question of the propriety of the instructions. (Rule 7(a), Rules on Appeal.) Furthermore, in the condition of the record as it now is, there is nothing to show that he ever asked such an instruction. The doctrine of imminent peril is, in any event, primarily one of fact for the jury's decision. (*Leo* v. *Dunham,* 41 Cal.2d 712, 715 [3] [264 P.2d 1].) The question of last clear chance is in the same category.

All of the arguments of plaintiff and defendants on these two subjects revolve around an assumption of facts which

the jurors were not compelled to believe, and are based almost entirely on mathematical calculations which cannot be conclusive because of changing speed and variable distance estimates. As was hereinbefore pointed out, no one seems to have measured exact distances anywhere, and even though they had, speeds given are mere estimates which would be acceptable or not, according to the jury's analysis of what was shown by the whole evidence. As was pointed out in *Green v. Key System Transit Lines*, 116 Cal.App.2d 512, 521 [253 P.2d 780], mathematical calculations may be valuable in argument before a jury but they are not usually satisfactory as a basis for appellate court determination, due to the impossibility of judging what analysis the jury made.

We will not cumber the record by a detailed analysis of the authorities cited by plaintiff, for none of them enunciate any principles contrary to those herein expressed, and all of them are distinguishable from the case at bar on their facts.

The appeal from the "Order striking affidavits of Bennett Olan and Arthur Lewis" is dismissed.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied September 7, 1961, and appellant's petition for a hearing by the Supreme Court was denied October 17, 1961.