[No. B109989. Second Dist., Div. Seven. June 18, 1998.]

SCHAEFER/KARPF PRODUCTIONS, Plaintiff and Appellant, v. CNA INSURANCE COMPANIES et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of (1) part IV of the majority opinion and (2) the concurring opinion.

COUNSEL

Jason A. Forge for Plaintiff and Appellant.

Hawkins, Schnabel, Lindahl & Beck, Timothy A. Gonzalez and Brian J. Gladstone for Defendants and Respondents.

OPINION

JOHNSON, J.—Plaintiff Schaefer/Karpf Productions (Schaefer) appeals from the judgment in favor of defendant CNA Insurance Companies (CNA)

determining Schaefer did not suffer "property damage" within the terms of the comprehensive general liability policies CNA issued to its insureds. We affirm.

### FACTS AND PROCEEDINGS BELOW

Schaefer produced a television special for children entitled *The Best Christmas Pageant Ever*. After the show was aired on network television it was released on videotape for sales to schools, religious and civic organizations and the general public.

In 1992, Scholastic, Inc., a leading marketer of children's educational materials, ordered 32,500 videotapes of the *The Best Christmas Pageant Ever*. Schaefer contracted with The Video Company (TVC) to duplicate the show onto videotapes. TVC duplicated the show on tapes it purchased from the Matrix Video Duplication Corporation (Matrix). Some of the tapes Matrix sold to TVC were used tapes returned to Matrix by Cinderella Distributors, Inc., a distributor of pornographic films. TVC proceeded to produce the 32,500 videotapes of *The Best Christmas Pageant Ever* on the stock provided by Matrix and shipped the tapes to Scholastic. Scholastic in turn sold approximately 25,000 tapes of the show before Christmas 1992.

A few days before Christmas 1992, in Salt Lake City, Ms. Natay's fourth graders were enjoying a Christmas party in their classroom. As part of the festivities, Ms. Natay showed the children a videotape of *The Best Christmas Pageant Ever* which she had obtained from Scholastic. Because she was trying to serve refreshments to 38 nine-year olds and things were "chaotic," Ms. Natay did not stop and rewind the tape when the program ended. "All of a sudden the class got quiet" and "the kids were nudging each other." When she looked up Ms. Natay saw to her shock her students were watching a graphically explicit scene in which a couple was engaged in sexual intercourse. Students and teachers had similar experiences at the Moline Christian School in Moline, Michigan, the second grade at Rocky Branch School in Walland, Tennessee, and the Manchester Elementary School in Perry, Ohio, to name a few. In Philadelphia, Mississippi, Ms. Cheeks left to run an errand while her young children remained at home watching *The Best Christmas Pageant Ever*. When she returned she was "horrified" to find her children were watching not a Christmas movie but "a hard-core pornography scene" in which a couple was engaged in oral sex. The sexually explicit material at the end of the videotapes was seen by other children across America that Christmas, giving a new meaning to the term "kiddie-porn."

While the students who watched the videotape may have been confused by this *Best Christmas Pageant Ever,* parents, teachers and principals were not.

Nor were they amused. Scholastic recalled all the videotapes of the show and refused to pay Schaefer.

Schaefer brought an action against TVC and Matrix for breach of contract, negligence and breach of warranty seeking damages for lost profits and loss of goodwill (the underlying action). Both companies were insured by CNA under standard comprehensive general liability (CGL) policies. Both companies tendered defense of Schaefer's action to CNA. CNA disclaimed any obligation to defend or indemnify the companies on the ground Schaefer's claims were not covered by the policies.

TVC did not defend the underlying action. Matrix retained counsel and provided its own defense.

Prior to trial, Schaefer and Matrix entered into an agreement which provided in pertinent part: (1) Matrix would not contest liability but the trier of fact would make its own determination as to liability and damages based upon the evidence introduced at trial; (2) Schaefer would not execute on the assets of Matrix to satisfy any judgment against it resulting from the trial; (3) Matrix assigned to Schaefer its rights, claims and entitlements to indemnity from CNA relating to Schaefer's claims and Matrix's claims for bad faith and all other tort and contract claims against CNA.

The underlying action was tried to the court which awarded Schaefer a judgment in the sum of $1 million against Matrix and TVC "as the measure of damages resulting from physical injury to or the loss of use of tangible property," the videotapes of *The Best Christmas Pageant Ever*.

Thereafter, Schaefer commenced the present action against CNA to enforce its judgment against Matrix and TVC under Insurance Code section 11580 and to enforce Matrix's claims for fraud and breach of contract.

Schaefer and CNA filed cross-motions for summary judgment. The trial court granted CNA's motion on the grounds CNA was not a party to the underlying action therefore it was not bound by the trial court's finding in that action Schaefer suffered "property damage" and, further, any damage to the videotapes of *The Best Christmas Pageant Ever* resulting from the inclusion of the pornographic material was not "property damage" as the term is defined in the CNA policies. A judgment in favor of CNA was entered in due course and Schaefer filed a timely appeal.

The two principal issues on appeal are (1) whether the incorporation of a defective or harmful product into the product of another causes "physical

injury" within the meaning of property damage coverage in the standard comprehensive general liability policy[1] and (2) if so, whether Schaefer suffered physical injury to "tangible property" as the result of the linkage of a pornographic movie to its production *The Best Christmas Pageant Ever.* We reach those issues after resolving some preliminary matters.

## DISCUSSION

### I. *In This Case, the Duty to Defend and the Duty to Indemnify Are the Same.*

The ultimate question in this case is whether Schaefer's injury was covered under the policies CNA issued to Matrix and TVC. If it was, then Schaefer can recover from CNA on its judgment against Matrix and TVC as well as on Matrix's assigned claim against CNA for breach of the duty to defend. If Schaefer's injury was not covered under the policies it can recover nothing from CNA. This is not a case in which Schaefer could lose on the issue of CNA's duty to indemnify Schaefer for its losses but win on the issue of CNA's broader duty to defend Matrix. Although as a general rule CNA owed a duty to defend Matrix against claims which contained even a potential for indemnity (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153]), this duty does not apply to claims where the only potential for indemnity turns on a question of policy interpretation. (*Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 25-26 [44 Cal.Rptr.2d 370, 900 P.2d 619]; *A-Mark Financial Corp.* v. *CIGNA Property & Casualty Companies* (1995) 34 Cal.App.4th 1179, 1191-1192 [40 Cal.Rptr.2d 808].) In the present case there has never been any issue as to the basis for Schaefer's claim and CNA's letters denying coverage show it was fully aware of the material facts. CNA's position is and always has been Schaefer's loss did not constitute "property damage" within the terms of the polices and, even if it did, the loss was excluded under other policy provisions.

### II. *CNA Was Not Estopped From Litigating the Coverage Issue.*

Schaefer initially argues CNA was estopped from denying coverage because the coverage issue was adjudicated against it in the underlying liability action between Schaefer, TVC and Matrix.

Under the policies issued to TVC and Matrix, CNA promised to "pay those sums that the insured becomes legally obligated to pay as damages

---

[1] In the unpublished portion of this opinion the majority explains why it believes the incorporation of a defective or harmful product into the product of another causes "physical injury" to the latter within the meaning of the property damage coverage in the standard comprehensive general liability policy.

because of . . . . 'property damage' to which this insurance applies." "Property damage" is defined as: "Physical injury to tangible property, including all resulting loss of use of that property; or loss of use of tangible property that is not physically injured." The judgment in the underlying action, drafted by Schaefer, contained a finding Schaefer's loss "result[ed] from physical injury to or the loss of use of tangible property, the videotapes of 'The Best Christmas Pageant Ever.' " According to Schaefer the effect of the judgment in the underlying action is the same as if the court had found "Schaefer's loss resulted from 'property damage' as defined in Section V, paragraph 12 of CNA's Commercial General Liability Coverage Form CG 1185." We reject this argument.

■ One of the prerequisites for collateral estoppel is the " 'identity of the issue presented in the second action with one necessarily decided [actually litigated] in the first.' " (*Ceresino* v. *Fire Ins. Exchange* (1989) 215 Cal.App.3d 814, 820 [264 Cal.Rptr. 30].) This requirement is not met here.

■ It is well-settled an insurer who is on notice of an action against its insured and refuses to defend on the ground the alleged claim is not within the policy coverage is bound by a judgment in the action, absent fraud or collusion, "as to all material findings of fact *essential to the judgment of liability [and damages] of the insured.*" (*Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.* (1959) 51 Cal.2d 558, 561 [334 P.2d 881] (*Geddes I*), (italics added); see also *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 884-886 [151 Cal.Rptr. 285, 587 P.2d 1098].) The insurer is not bound, however, as to issues "not necessarily adjudicated in the prior action and can still present any defenses not inconsistent with the judgment against the insured." (*Geddes I, supra*, 51 Cal.2d at pp. 561-562.)

Generally speaking, in an action by an injured party against the party who allegedly caused the injury the court does not adjudicate the issue of insurance coverage. The only questions litigated are the defendant's liability and the amount of damages. The plaintiff is not concerned with the theory of liability which produces victory; only with procuring the largest possible judgment. Similarly, the defendant is concerned only with avoiding, or at least minimizing, a judgment for the plaintiff. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 279 [54 Cal.Rptr. 104, 419 P.2d 168].) Whether the plaintiff's loss is covered by the defendant's insurance is not germane to the action, and evidence on that issue would be excluded as irrelevant. (See Cal. Law Revision Com. com., 29B West's Ann. Evid. Code (1995 ed.) § 1155, p. 532.)

■ The present case is not an exception to the rule. It is clear from the record the issue of coverage under the CNA policies was not adjudicated in the underlying action.

■ In determining what issues were "actually litigated" in the underlying action the court in the subsequent action cannot rely exclusively on the findings in the underlying action but must "carefully scrutinize" the pleadings and proof. (*Clark* v. *Lesher* (1956) 46 Cal.2d 874, 880-881 [299 P.2d 865].) This scrutiny includes looking behind the findings at the evidence presented to determine what was actually decided. (See, e.g., *County of L. A.* v. *Continental Corp.* (1952) 113 Cal.App.2d 207, 218-219 [248 P.2d 157].) The party asserting collateral estoppel must prove the issue was raised, actually submitted for determination and determined and that contrary evidence on the issue was not restricted. (*Barker* v. *Hull* (1987) 191 Cal.App.3d 221, 226 [236 Cal.Rptr. 285].)[2]

■ We have reviewed the complaint in the underlying action, the trial transcript, the court's written ruling following trial and the judgment and have found nothing to support Schaefer's contention the court in the underlying action adjudicated the issue of insurance coverage. For example, we note the judgment recites the property damaged was the videotapes of *The Best Christmas Pageant Ever.* As we explain below, the videotapes themselves cannot be the property damaged, for coverage purposes, because the damaging pornographic material was already on the tapes when they were sold to Matrix, which in turn sold them to Schaefer. Schaefer may have suffered property damage for purposes of establishing liability but whether that property damage is covered by CNA's policies was not decided in the underlying action.[3]

### III. The Premium Schedule of an Insurance Policy Describing the Insured's Business Activities Does Not Confer Coverage for All Injuries Resulting From Those Activities.

■ In the premium schedules of the policies issued to Matrix and TVC, under the heading "Description of Hazards," are descriptions of the insureds' businesses. Matrix's business is described as "motion pictures-production-in studios or outside-all operations prior to the development of negatives including products and completed operations." TVC's business is described as "records or tape mfg.-prerecorded."

Schaefer argues these descriptions of the insureds' businesses in the premium schedules mean that by paying the premiums the insureds are

---

[2]Where, as here, the party subject to a claim of collateral estoppel is the party moving for summary judgment it has the burden of showing the opponent cannot establish the prerequisites for collateral estoppel. (Code Civ. Proc., § 437c, subd. (o).) CNA met its burden.

[3]Although CNA is not estopped from denying coverage it is bound by any material findings of fact essential to the judgment of liability of Matrix and TVC. (*Geddes I, supra,* 51 Cal.2d at p. 561.)

entitled to indemnity for any losses of any kind arising out of the conduct of those businesses. We do not accept this argument.

The purpose of the declaration of hazards is to identify the activities to which the policy relates, e.g., motion picture production and tape manufacturing, as opposed to scuba diving instruction or transmission repairing. (*American Policyholders' Ins. Co.* v. *Smith* (1980) 120 N.H. 202 [412 A.2d 749, 750-751]; Robinson, *Insurance Coverage of Intellectual Property Lawsuits* (1989) 17 AIPLA Q. J. 122, 125.) The declaration of hazards does not expand the coverage of the policy from indemnity for physical injury and property damage to coverage for any and all loss no matter how caused.

IV.  *The Incorporation of a Defective or Harmful Product Into the Product of Another Causes "Physical Injury" to The Latter Within the Meaning of the Property Damage Coverage in the Standard Comprehensive General Liability Policy.\**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

V.  *Schaefer Did Not Suffer Physical Injury to "Tangible Property."*

CNA maintains Schaefer did not suffer physical injury to, or loss of use of, "tangible property." The only tangible property involved in this case was the videotapes themselves and, assuming they were defective by reason of containing pornographic material, then they were defective when Schaefer purchased them. The tapes did not cause injury through linkage to any tangible property of Schaefer's. They did not harm the "master tape" of the *Pageant*; it could still be used to make as many more copies of the *Pageant* as Schaefer wanted. Even if the defective tapes injured Schaefer's profits or its goodwill, these are intangibles not covered by a CGL policy. (*Geddes I*, *supra*, 51 Cal.2d at pp. 565-566; cf. *Fresno Economy Import Used Cars, Inc.* v. *United States Fid. & Guar. Co.* (1977) 76 Cal.App.3d 272, 284 [142 Cal.Rptr. 681] [no property damage coverage for insured's sale of car with broken head gasket absent showing other parts of car damaged thereby].)

Schaefer concedes there was no physical injury to its master tape but argues it suffered injury to, or loss of use of, its production of *The Best Christmas Pageant Ever* and the videotapes themselves.

It is undisputed the videotapes were "tangible property," but Schaefer cannot base coverage on physical injury to the videotapes because they were defective when Schaefer bought them. (Cf. *Geddes I*, *supra*, 51 Cal.2d at pp.

*See footnote, *ante*, page 1306.

564-565 [no coverage for injury or destruction of the doors themselves].) Nor is there coverage for loss of use of the defective tapes. Exclusion (n) of the policies issued to Matrix and TVC excludes coverage for "[d]amages for any loss, cost or expense incurred by you or others for the loss of use . . . of your product." "Your product" is defined as "[a]ny goods or products . . . manufactured, sold, handled, distributed or disposed of by [you]."

The only way we can conceive of Schaefer's loss being covered would be if its production of *The Best Christmas Pageant Ever* is "tangible property" separate and apart from the videotapes themselves. If the production (that is, Schaefer's concept of the story) is tangible property, then it could be said to have suffered physical injury from being linked in the public mind with pornography in the same way the concept of the hamburger was allegedly injured by being linked in the public mind with mad cow disease[4] or the buildings in *Geddes*, in *Economy Lumber Co.* v. *Insurance Co. of North America* (1984) 157 Cal.App.3d 641 [204 Cal.Rptr. 135], in *Armstrong World Industries, Inc.* v. *Aetna Casualty & Surety Co.* (1996) 45 Cal.App.4th 1 [52 Cal.Rptr.2d 690], and in *Eljer Mfg., Inc.* v. *Liberty Mut. Ins. Co.* (7th Cir. 1992) 972 F.2d 805, suffered injury from being linked to defective building materials. But is a theatrical production like a hamburger or a building?

"Tangible property," for purposes of a CGL policy is property " 'having physical substance apparent to the senses.' . . ." (*Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 219 [169 Cal.Rptr. 278], citation omitted.) A concept is something invisible and incorporeal, having no substance or body until it is transmitted onto a medium. It is the medium which is the tangible property, not the concept.

Yet, one might argue, when we speak of a painting, Van Gogh's "Starry Night" for example, we are not speaking about the paint or the canvas on which the paint sits; we are speaking about Van Gogh's concept or presentation of a starry night which to us has a physical substance apparent to our senses separate and apart from the paint and the canvas. Likewise, when we speak about the program *The Best Christmas Pageant Ever*, we are not speaking about a black plastic box with a reel of tape inside; we are speaking about Schaefer's concept of a story about a Christmas pageant which has taken on a form, a substance, apparent to our senses. Here, the medium is not the message.

---

[4]In 1996, television personality Oprah Winfrey was sued by a Texas cattle producer under the state's agricultural disparagement statute after a guest on her show claimed American cattle were or could be contaminated by bovine spongiform encephalopathy (better known as "mad cow disease") and Oprah commented she would never eat another hamburger. (See Bederman et al, *Of Banana Bills and Veggie Hate Crimes: The Constitutionality of Agricultural Disparagement Statutes* (1997) 34 Harv. J. on Legis. 135, 167-168.)

Whatever might be said of this argument in the world of art or philosophy, we are dealing in this case with the world of insurance—a practical and prosaic world more Philistine than philosophical, more artisan than artistic. ■ It is a bedrock principle of this world that the provisions of insurance contracts are interpreted in their ordinary and popular sense. (*Bay Cities Paving & Grading, Inc.* v. *Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 867 [21 Cal.Rptr.2d 691, 855 P.2d 1263].) ■ In this world, videotapes are tangible, concepts are intangible.

Needless to say, given the unique facts of this case, we have found no case directly on point. Two federal circuit court opinions, however, support CNA's argument Schaefer did not suffer injury to tangible property.

In *Gulf Ins. Co.* v. *L.A. Effects Group, Inc.* (9th Cir. 1987) 827 F.2d 574, the court, applying California law, held injury to the artistic value of a film was not injury to tangible property for purposes of CGL coverage. In *Gulf*, the defendant entered into a contract with Twentieth Century Fox to produce special effects for the film ALIENS (1986). During the course of production, a dispute arose between Fox and defendant over defendant's performance and defendant quit. Fox brought an action against defendant asserting various legal and equitable claims. Included in the complaint was an allegation the special effects sequences defendant created for the film "were inexpertly produced and either excised from or detrimentally incorporated into the final cut." (*Id.* at p. 577.) Defendant tendered defense of Fox's action to Gulf, its CGL insurer. Gulf then brought this action against defendant seeking a declaration it had no duty to defend or indemnify defendant because Fox was not alleging damage to tangible property within the meaning of the 1973 definition. Defendant argued Fox's complaint could be construed as alleging damage to the "artistic value" of the film which, defendant contended, constituted a form of tangible property separate and distinct from a strip of celluloid and the reel on which it was spooled.

The Ninth Circuit affirmed a judgment declaring Gulf had no duty to defend or indemnify defendant in the Fox action. The court found Fox's complaint did not allege damage to or destruction of property, tangible or otherwise. Even if it did, there would be no coverage for injury to artistic value. The court cited *Giddings* v. *Industrial Indem. Co., supra*, 112 Cal.App.3d at page 219 for the proposition "tangible property" for purposes of a CGL policy means " ' "property . . . having physical substance apparent to the senses." ' " (827 F.2d at p. 578.) Artistic value, the court concluded, is not something which has physical substance apparent to the senses nor is there any objective means available to quantify in substantive economic terms any diminution in the artistic value of a film. Therefore, the

court held, "the artistic value of a movie is [not] tangible property within the meaning and intent of the insurance policy." (*Ibid.*)

In *Lucker Mfg.* v. *Home Ins. Co.* (3d Cir. 1994) 23 F.3d 808, the court held the design concept for a product, as opposed to the product itself, was not tangible property for purposes of CGL liability. In *Lucker*, the plaintiff contracted with the Shell Oil Company to design and manufacture an anchoring system for off-shore drilling platforms called a Lateral Mooring System (LMS). The design called for the use of castings, large metal objects which attach to the ocean floor and hold the cables connected to the platform. Lucker purchased a number of these castings from Grede Foundries. Prior to actually building the LMS, Lucker decided to test the strength of Grede's castings. Confident the test would be successful and impressive, Lucker invited Shell representatives to watch. The test turned out a disaster. One of Grede's castings failed. Had it been incorporated into the LMS and put into operation, Shell's drilling platform would have floated off in the sea. As a result of the casting's failure, Shell insisted Lucker make changes in the design of the LMS at a cost of $600,000. Lucker then sued Grede under contract and tort theories for the cost of the design changes. Grede tendered defense of the action to Home Insurance under its CGL policy. Home refused to defend Grede and disclaimed all liability under the policy on the grounds Lucker's injury did not constitute "loss of use" of "tangible property" as those terms are used in the 1973 definition. After obtaining a judgment against Grede, Lucker, as Grede's assignee, brought an action against Home for defense costs and indemnification. (*Id.* at pp. 810-811.)

The Third Circuit affirmed a judgment for Home. The court agreed with Lucker "the decreased value of a product because of loss of customer acceptance of the product is a 'loss of use' within the meaning of the standard CGL policy." (23 F.3d at p. 816.)[5] Loss-of-use coverage, however, only applies to tangible property. Lucker conceded a design concept is not tangible property because an idea cannot be touched and is not materially existent. But, it argued, a design which is reduced to a tangible medium like a blueprint or a computer disk (or, presumably, a videotape) should be considered tangible property. Home, on the other hand, argued that where the real value of a design is in the idea, not in the physical plans that memorialize the idea, any loss in value of the design represents a loss in value of the idea, which is not a loss of use of tangible property. (*Id.* at p. 819.) The court concluded Home had the better argument: "In this case, none of the losses Lucker sought from Grede represented a loss in the value of the

[5]Similarly, in the present case, it is undisputed the value of Schaefer's production of *The Best Christmas Pageant Ever* plummeted when, as a result of the porno movie catastrophe, Scholastic refused to deal in that product and blackballed all other Schaefer products.

storage medium in which the design for the LMS was embodied or in the costs in reducing the design to blueprints or computer tape (e.g. the costs of having engineers draw up the plans for the system). The recovery Lucker sought was for the loss of use of the design itself—for the loss in usefulness of the original concept of the LMS. The loss of use of this concept, however, was not loss of use of something which could be touched or felt. For this reason, we hold that Lucker's loss of use of the LMS design was not loss of use of tangible property." (*Id.* at p. 820.)

For the reasons stated above, we conclude Schaefer did not suffer physical injury to or the loss of use of "tangible property" within the meaning of the CGL policies.

## DISPOSITION

The judgment is affirmed.

Lillie. P. J., concurred.

**NEAL, J.,** Concurring.*—

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

A petition for a rehearing was denied July 14, 1998, and appellant's petition for review by the Supreme Court was denied September 16, 1998.

---

*See footnote, *ante,* page 1306.