[No. B204184. Second Dist., Div. Three. Feb. 4, 2010.]

RICHARD ALONZO BELL et al., Plaintiffs and Appellants, v. BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT et al., Defendants and Appellants.

## COUNSEL

Engstrom, Lipscomb & Lack, Lee G. Lipscomb, Robert J. Wolfe, Daniel G. Whalen and Gregory P. Waters for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Roy M. Brisbois, Raul L. Martinez and Steven E. Meyer for Defendants and Appellants.

## OPINION

**CROSKEY, J.**—Richard Alonzo Bell suffered severe injuries when he lost control of his 1996 BMW Z3 roadster convertible while driving on a freeway transition road. He and his wife, Ema Baraka Wright-Bell (collectively Plaintiffs), sued Bayerische Motoren Werke Aktiengesellschaft and BMW of North America, LLC (collectively Defendants). After the jury returned a special verdict in favor of Defendants on negligence and products liability counts, the trial court granted Plaintiffs' new trial motion but denied their motion for judgment notwithstanding the verdict. Defendants appeal the new trial order. Plaintiffs appeal the judgment and the denial of their motion for judgment notwithstanding the verdict.

We conclude that the trial court prejudicially erred by granting a new trial based on inadmissible statements in juror declarations, that the record does not justify a new trial on the grounds stated by the trial court, and that the new trial order cannot be affirmed on other grounds. We also conclude that Plaintiffs have shown no prejudicial error in the judgment. We therefore will reverse the order granting a new trial and affirm the judgment. We will dismiss Plaintiffs' appeal from the denial of the motion for judgment notwithstanding the verdict as abandoned.

## *FACTUAL AND PROCEDURAL BACKGROUND*

### 1. *Factual Background*

Bell was driving along a curve on a freeway transition road on a Sunday morning in November 2002, when the tail end of his car suddenly slid out.

He turned the steering wheel in the direction of the slide and accelerated, but his car continued to slide. He then slammed on the brakes and lost control of the car. His car rolled over twice down a dirt embankment and landed upright. He suffered serious injuries when his head came into contact with the ground through the soft top of his convertible. Bell, who is six feet tall, was wearing his seatbelt at the time.

David Kang was driving a van nearby at the time of the accident. According to Kang, Bell's car struck hard against the passenger side of his van, and his van came to a stop. Kang walked over to Bell's car and spoke to Bell.

### 2. *Complaint, Trial and Judgment*

Plaintiffs filed a complaint against Defendants and others in October 2003, alleging counts against Defendants for negligence, strict products liability, and breach of warranty. A jury trial against Defendants alone commenced in July 2007. The court instructed the jury on some matters before the presentation of evidence, including that the jury must not consider whether any party had insurance.

Plaintiffs presented evidence at trial that Defendants' product testing had shown that an occupant of a Z3 would experience head-to-ground contact in the event of a rollover, but that Defendants had decided not to complete the development of a rollover protection system. Plaintiffs also introduced a brochure for the Z3 stating that safety was "a cornerstone of BMW's philosophy" and that "in the event of a rollover, double-tube reinforced windshield pillars help protect occupants." The owner's manual and advertising also espoused the vehicle's safety.

Kang testified on direct examination by Plaintiffs' counsel that after his van came to a rest, "I went over to the driver and said, 'Are you okay?' " The following exchange occurred on cross-examination by Defendants' counsel:

Defendants' counsel: "Now, when you walked back to talk to the driver of the BMW, you went back to find out whether he had insurance, didn't you?"

Kang: "Yes, I did. I did. I asked him if—"

The court: "Can we—"

Plaintiffs' counsel: "Objection, your honor."

The court: "—just stop for a second?"

Defendants' counsel: "I'm sorry. Your honor, I apologize."

The court: "Okay. So, ladies and gentlemen, would you disregard that question and we'll just go ahead? Thank you." ·

Plaintiffs' counsel moved for a mistrial based on the reference to insurance. The court took the matter under submission. The court denied the motion 17 days later during a conference on jury instructions.

The court instructed the jury on counts for negligence, design defect based on consumer expectations, and design defect based on failure to warn. The parties stipulated that a rollover accident was a foreseeable use or misuse of the car.

The special verdict form stated, in relevant part:

**"QUESTION NO. 1**

"Did the 1996 BMW Z3 have potential risks that were known or knowable through the use of scientific knowledge available at the time of manufacture and/or distribution?

"___ Yes ___ No

"If your answer to question 1 is yes, then answer question 2. If you answered no, go to question 7.

**"QUESTION NO. 2**

"Did the potential risks present a substantial danger to users of the 1996 BMW Z3?

"___ Yes ___ No

"If your answer to question 2 is yes, then answer question 3. If you answered no, go to question 7.

**"QUESTION NO. 3**

"Would ordinary consumers have recognized the potential risks?

"___ Yes ___ No

"If your answer to question 3 is no, then answer question 4. If you answered yes, go to question 7.

## "QUESTION NO. 4

"Did the BMW defendants fail to adequately warn of the potential risks?

"___ Yes ___ No

"If your answer to question 4 is yes, then answer question 5. If you answered no, go to question 7.

## "QUESTION NO. 5

"Was the 1996 BMW Z3 used or misused in a way that was reasonably foreseeable to the BMW defendants?

"___ Yes ___ No

"If your answer to question 5 is yes, then answer question 6. If you answered no, go to question 7.

## "QUESTION NO. 6

"Was the lack of sufficient warnings a substantial factor in causing harm to plaintiffs?

"___ Yes ___ No

"If your answer to question 6 is yes or no, then answer question 7.

## "QUESTION NO. 7

"Did the BMW defendants know or should they reasonably have known that the 1996 BMW Z3 was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner?

"___ Yes ___ No

"If your answer to question 7 is yes, then answer question 8. If you answered no, go to question 12.

### "QUESTION NO. 8

"Did the BMW defendants know or should they reasonably have known that users would not realize the danger?

"___ Yes ___ No

"If your answer to question 8 is yes, then answer question 9. If you answered no, go to question 12.

### "QUESTION NO. 9

"Did the BMW defendants fail to adequately warn of the danger of the 1996 BMW Z3?

"___ Yes ___ No

"If your answer to question 9 is yes, then answer question 10. If you answered no, go to question 12.

### "QUESTION NO. 10

"Would a reasonable manufacturer and/or distributor under the same or similar circumstances have warned of the danger of the 1996 BMW Z3?

"___ Yes ___ No

"If your answer to question 10 is yes, then answer question 11. If you answered no, go to question 12.

### "QUESTION NO. 11

"Was the BMW defendants' failure to warn a substantial factor in causing harm to Plaintiffs?

"___ Yes ___ No

"If your answer to question 11 is yes or no, then answer question 12.

### "QUESTION NO. 12

"Did the 1996 BMW Z3 fail to perform as safely as an ordinary consumer would have expected?

"___ Yes ___ No

"If your answer to question 12 is yes, then answer question 13. If your answer is no, go to question 15.

## "QUESTION NO. 13

"Was the 1996 BMW Z3 used or misused in a way that was reasonably foreseeable to the BMW defendants?

"___ Yes ___ No

"If your answer to question 13 is yes, then answer question 14. If your answer is no, go to question 15.

## "QUESTION NO. 14

"Was the 1996 BMW Z3's design a substantial factor in causing harm to Richard Bell?

"___ Yes ___ No

"If your answer to question 14 is yes or no, then answer question 15.

## "QUESTION NO. 15

"Were the BMW defendants negligent in designing, manufacturing, distributing and/or supplying the 1996 BMW Z3?

"___ Yes ___ No

"If your answer to question 15 is yes, then answer question 16. If you answered no, go to the instruction after question 16.

## "QUESTION NO. 16

"Was the BMW defendants' negligence a substantial factor in causing harm to Plaintiffs?

"___ Yes ___ No

"If your answer to questions 6 **or** 11 **or** 14 **or** 16 is 'yes', answer question 17. Otherwise, stop here, answer no further questions, and have the presiding juror sign and date this form."[1]

Plaintiffs' counsel argued in closing argument, among other things, that an ordinary consumer would not have recognized the potential risk of sustaining a significant head or neck injury in a rollover accident in a Z3. Defendants' counsel argued that an ordinary consumer knew that driving was dangerous and that a driver could be injured in an accident, including a rollover accident.

The jury submitted a question a short time after beginning its deliberations. The question stated: "Does the term in question #1 'potential risk' refer to this roll over accident, or to all potential risks?" Plaintiffs' counsel argued that the answer should be that the term "potential risk" referred to the particular risk of head-to-ground contact in a rollover accident or to the risk of significant head or neck injury in a rollover. Defendants' counsel disagreed and argued that the question was unclear. After further discussion, the court stated: "I think we should say we're unable to answer this question as posed. That's what I think we should say. Let them let us know what they're really asking. That's what I think we should do."·

The court answered the jury in writing: "We are unable to answer this question as phrased." The jury later asked several additional questions, but did not rephrase its first question.

The jury returned a special verdict answering "yes" to questions Nos. 1, 2, 3, and 7, and "no" to questions Nos. 8, 12, and 15. The court polled and then excused the jury. The court entered a judgment on the special verdict in favor of Defendants on September 11, 2007.

### 3. *Motions for New Trial and for Judgment Notwithstanding the Verdict*

Plaintiffs filed a notice of intention to move for a new trial, listing all of the statutory grounds (Code Civ. Proc., § 657). They argued in their memorandum of points and authorities in support of the motion that (1) the court's failure to answer the jury's first question was prejudicial error; (2) the jury failed to apply an objective standard of the ordinary consumer in answering special verdict questions Nos. 3, 8, and 12, and instead applied a subjective standard based on Bell's education and intelligence; (3) the evidence was

---

[1] The trial court informed the jury that the parties had stipulated that the answer to questions Nos. 5 and 13 was "yes."

insufficient to support the finding that an ordinary consumer would have been aware of the potential risks; (4) Defendants' counsel committed misconduct by questioning Kang regarding Bell's insurance; (5) jurors committed misconduct by intimidating a juror, misrepresenting the law, failing to deliberate, and failing to follow the instructions; (6) the polling of the jury showed that it failed to reach a verdict on special verdict question No. 3; and (7) the court's ruling on Defendants' requested modification of a jury instruction (CACI No. 1204) was error. Plaintiffs filed declarations by three jurors in support of the motion.

Defendants opposed the new trial motion and filed declarations by nine jurors stating, generally, that the jury had followed the instructions and that there was no misconduct. Defendants also objected to portions of the juror declarations filed by Plaintiffs to the extent that they purported to reflect the jurors' internal thought processes. Plaintiffs objected to portions of the juror declarations filed by Defendants. Defendants filed two supplemental juror declarations before the hearing on the motion.

Plaintiffs also moved for judgment notwithstanding the verdict, arguing that the evidence compelled the conclusion that an ordinary consumer would not have been aware of the potential risks of head or neck injury in a rollover accident. They argued that the evidence also required other findings in their favor on the issue of liability and that a new trial should be granted solely to determine the amount of damages. Defendants opposed the motion.

The trial court sustained in part and overruled in part the parties' evidentiary objections.[2] The court concluded that Defendants' counsel had committed misconduct by questioning Kang regarding Bell's insurance and that the misconduct was an "[i]rregularity in the proceedings" (Code Civ. Proc., § 657, subd. 1). The court stated that the question "raises inferences Mr. Kang asked for insurance because Mr. Bell was negligent in operating his vehicle and that Mr. Bell may have been compensated for his injuries by his insurance company." The court concluded that despite its prior instruction to the jury not to consider insurance and its instruction at the time of the question to disregard the question, the prejudice was incurable.

The court also concluded that its failure to respond to the jury's question regarding the meaning of "potential risks" was prejudicial error. The court stated, "The declaration of [Juror] Dr. Joyce Fox ('Dr. Fox') indicates jurors 'verbally expressed that they understood "potential" risks to include any risks associated with driving a vehicle[.]' . . . Thus, similar to *Bartosh* [*v. Banning*

---

[2] The court overruled Defendants' objections to those portions of the statements in the juror declarations that are at issue here.

(1967) 251 Cal.App.2d 378 [59 Cal.Rptr. 382]], it was clear the jury was confused regarding the scope of 'potential risks' and it was incumbent on the Court to provide proper guidance on this important issue of law." The court identified five factors for a court to consider in determining whether instructional error was prejudicial (*LeMons v. Regents of University of California* (1978) 21 Cal.3d 869, 876 [148 Cal.Rptr. 355, 582 P.2d 946]) and stated: "A review of the record in light of these factors demonstrates the probability the failure to properly instruct the jury as to the scope of 'potential risks' may have misled the jury. As pointed out by plaintiffs, the Court recognized the confusion may have resulted from defendants' argument it could not warn against all risks . . . . Moreover, according to Dr. Fox, after the jury received the Court's response, the jury's vote changed from 'no' to 'yes' on Special Verdict Form Question No. 3 with jurors arguing 'potential risks' must be interpreted broadly. 'After we received the court's response to the first question, the jurors in the majority verbally argued that the term "potential risks" must be interpreted broadly instead of the particular risk of a head strike in a rollover which I had advocated. The jury's vote changed after the court's response to the question, with a consensus of nine now being reached to answer "yes" to Special Verdict Form question number three', Declaration of Dr. Fox, Page 2, Lines 11–16; see also Declaration of Wayne [*sic*] Porter, III ('Mr. Porter'), Page 1, Line 28 through Page 2, Line 3. The probability of confusion is further supported by the closeness of the jury verdict."[3] The court therefore granted the new trial motion.

The court also concluded that substantial evidence supported the finding that an ordinary consumer would have been aware of the potential risks, that there was no juror misconduct, and that Plaintiffs had failed to establish other grounds for a new trial. The court stated that in light of its granting of the new trial motion, the motion for judgment notwithstanding the verdict was moot, effectively denying that motion.

### 4. *Appeals*

Defendants appealed the order granting a new trial. Plaintiffs appealed the judgment and the denial of their motion for judgment notwithstanding the verdict.

### CONTENTIONS

Defendants contend (1) the trial court relied on inadmissible juror declarations in granting a new trial; (2) the instructions and special verdict form

---

[3] The portion of the Porter declaration cited by the court stated, "But several of the jurors in the majority expressed a broader definition of the term by making verbal arguments that just driving itself is unsafe and that potential risks means the risk of getting into an accident, including the risk of the car rolling over."

were proper, the court properly declined to answer the jury's question, and any error was harmless; (3) any new trial should be limited to the count for strict liability based on failure to warn; and (4) the reference to insurance was neither improper nor prejudicial.

Plaintiffs contend (1) the trial court properly granted a new trial based on both its failure to answer the jury's question and attorney misconduct; and (2) the new trial order was proper for reasons other than those relied on by the trial court, including that (i) jurors committed misconduct by failing to follow the instructions, refusing to deliberate, intimidating another juror, and misrepresenting the jury instructions; (ii) the evidence compels the conclusion that an ordinary consumer would not have been aware of the potential risks; (iii) the polling of the jury showed that it failed to reach a verdict on special verdict question No. 3; and (iv) the court's ruling on Defendants' requested modification of CACI No. 1204 was error.

## *DISCUSSION*

### 1. *New Trial Motion Legal Framework*

A verdict may be vacated, in whole or in part, and a new trial granted for any of the grounds listed in Code of Civil Procedure section 657 materially affecting the substantial rights of a party. (*Ibid.*) Those grounds are "Irregularity in the proceedings," "Misconduct of the jury," "Accident or surprise," "Newly discovered evidence," "Excessive or inadequate damages," "Insufficiency of the evidence," and "Error in law." (*Ibid.*)

A court granting a new trial motion must specify both the grounds on which the motion is granted and the court's reasons for granting the motion on each of those grounds.[4] (Code Civ. Proc., § 657.) An order granting a new trial must be affirmed on appeal if a new trial "should have been granted upon any ground stated in the motion, whether or not specified in the order or specification of reasons," except that an order can be affirmed on the ground of insufficiency of the evidence to justify the verdict or excessive or inadequate damages only if such ground was stated in the order and can be affirmed on those grounds only for the reasons specified in the order or specification of reasons. (*Ibid.*)

---

[4] The "grounds" for granting a new trial refers to the seven causes listed in Code of Civil Procedure section 657. Those statutory grounds are distinguished from the "reasons" for granting a new trial on a particular ground. (*Oakland Raiders v. National Football League* (2007) 41 Cal.4th 624, 634 [61 Cal.Rptr.3d 634, 161 P.3d 151] (*Oakland Raiders*).) If the trial court fails to expressly specify the grounds for granting a new trial but states the reasons, the stated reasons ordinarily indicate the intended grounds for the decision. (*Jones v. Citrus Motors Ontario, Inc.* (1973) 8 Cal.3d 706, 710 [106 Cal.Rptr. 28, 505 P.2d 220].)

We generally review the trial court's decision to grant a new trial for specified reasons under the abuse of discretion standard. (*Oakland Raiders, supra,* 41 Cal.4th at p. 636; *Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, 412 [93 Cal.Rptr.2d 60, 993 P.2d 388].) We defer to the trial court's resolution of conflicts in the evidence if the decision is supported by substantial evidence and reverse only if there is no reasonable basis for the court's decision or the decision is based on a legal error. (*Oakland Raiders, supra,* at p. 636; *Conner v. Southern Pacific Co.* (1952) 38 Cal.2d 633, 637 [241 P.2d 535].)

An order granting a new trial "will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears. This is particularly true when the discretion is exercised in favor of awarding a new trial, for this action does not finally dispose of the matter. So long as a reasonable or even fairly debatable justification under the law is shown for the order granting the new trial, the order will not be set aside." (*Jiminez v. Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387 [93 Cal.Rptr. 769, 482 P.2d 681].)

### 2. *We Cannot Affirm the New Trial Order Based on Attorney Misconduct*

■ Misconduct of counsel is an "[i]rregularity in the proceedings of the court, jury or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial" (Code Civ. Proc., § 657, subd. 1). (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 870 [135 Cal.Rptr. 647, 558 P.2d 545].) Attorney misconduct can justify a new trial only if it is reasonably probable that the party moving for a new trial would have obtained a more favorable result absent the misconduct. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801–802 [16 Cal.Rptr.3d 374, 94 P.3d 513] (*Cassim*); *Decker, supra,* at p. 872.)

■ Evidence that a person was insured against liability for another person's injury is inadmissible to prove negligence or other wrongdoing. (Evid. Code, § 1155.) Such evidence is irrelevant to both the question of liability and the amount of damages. (*Schaefer/Karpf Productions v. CNA Ins. Companies* (1998) 64 Cal.App.4th 1306, 1313 [76 Cal.Rptr.2d 42].) Evidence or statements by counsel suggesting that the defendant was insured against liability could cause the jury to find liability more readily or to inflate its award of damages in some circumstances. Although the insured's liability is not at issue if the evidence or statements by counsel relate to the plaintiff's insurance rather than the defendant's, evidence or statements suggesting that the plaintiff was insured could cause the jury to believe that the plaintiff will be compensated by insurance, which could cause the jury to find no liability more readily or to award lower damages. (*Blake v. E. Thompson Petroleum*

*Repair Co.* (1985) 170 Cal.App.3d 823, 830–831 [216 Cal.Rptr. 568].) We believe that in the circumstances presented here, however, it is exceedingly unlikely that any prejudice resulted from the brief mention of insurance.

■ It is common knowledge today that most drivers in California carry automobile insurance protecting them from liability.[5] (*Causey v. Cornelius* (1958) 164 Cal.App.2d 269, 275 [330 P.2d 468].) We believe that jurors ordinarily would assume that a driver with the financial means to pay for insurance, such as Bell, is insured even if there is no explicit mention of insurance at trial. Absent aggravating circumstances, the brief mention of the plaintiff's insurance in an action against an automobile manufacturer and distributor for negligence and products liability is very unlikely to cause the jury to conclude either that the plaintiff will be fully compensated for his injuries by insurance or that the defendant should be relieved of liability for any reason. Moreover, the trial court instructed the jury not to consider insurance on two occasions—at the commencement of trial, and after the close of evidence—and promptly admonished the jury to disregard the question regarding insurance on cross-examination. Such admonitions ordinarily are effective except in cases of extreme misconduct (*Whitfield v. Roth* (1974) 10 Cal.3d 874, 892 [112 Cal.Rptr. 540, 519 P.2d 588]), and we presume that the jury followed the instructions absent some indication to the contrary (*Cassim, supra*, 33 Cal.4th at pp. 803–804). We believe that the trial court could not reasonably conclude, despite the repeated instructions and admonition, that the brief mention of insurance in these circumstances was prejudicial. We therefore conclude that the order granting a new trial cannot be affirmed based on attorney misconduct.[6]

3. *We Cannot Affirm the New Trial Order Based on the Court's Failure to Clarify the Special Verdict Question*

a. *Rules Applicable to Erroneous or Misleading Jury Instructions and Special Verdict Questions*

When a new trial is granted based on an erroneous or misleading jury instruction, the order "will not be disturbed unless the questioned instruction was absolutely accurate and under no reasonable interpretation could possibly have misled or confused the jury. [Citations.]" (*Christian v. Bolls* (1970) 7 Cal.App.3d 408, 415 [86 Cal.Rptr. 545].) " 'If the challenged instruction was erroneous in any degree, or even if it is only "fairly debatable" that such instruction may have been misleading, the broad discretion of the trial court

---

[5] California drivers generally are required to carry liability insurance. (Veh. Code, § 16020 et seq.)

[6] In light of our conclusion, we need not decide whether the mention of insurance was attorney misconduct.

may not be disturbed. . . .' [Citations.]" (*Shaw v. Pacific Greyhound Lines* (1958) 50 Cal.2d 153, 159 [323 P.2d 391] (*Shaw*).)

The California Supreme Court in *Shaw* affirmed an order granting a new trial because of "minor defects" in an instruction. (*Shaw, supra,* 50 Cal.2d at p. 159.) The *Shaw* court stated that it probably would have affirmed the judgment if the trial court had not granted a new trial, but concluded that the new trial order was within the broad discretion of the trial court. "The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears, and the order will be affirmed if it may be sustained on any ground, although the reviewing court might have ruled differently in the first instance. [Citation.]" (*Ibid.*) Moreover, "the power of the judge to do justice by ordering a new trial is not impaired even though the moving party is technically estopped to claim error or has waived his right to complain. [Citations.]" (*Ibid.*; accord, *Malkasian v. Irwin* (1964) 61 Cal.2d 738, 747 [40 Cal.Rptr. 78, 394 P.2d 822].)

We conclude that the same rules apply when a new trial is granted based on an erroneous or misleading special verdict question. Such a question has the same potential to misguide the jury and result in a miscarriage of justice as an erroneous or misleading jury instruction. The trial court must consider the special verdict form and jury instructions as a whole, and the particular circumstances of the case, and decide whether the question was erroneous or misleading and, if so, whether the defect "materially affect[ed] the substantial rights of" the party moving for a new trial (Code Civ. Proc., § 657).

### b. *The Court Granted a New Trial Based on Inadmissible Evidence*

Evidence of jurors' internal thought processes is inadmissible to impeach a verdict. (Evid. Code, § 1150, subd. (a);[7] *People v. Hutchinson* (1969) 71 Cal.2d 342, 349–350 [78 Cal.Rptr. 196, 455 P.2d 132] (*Hutchinson*).) Only evidence as to objectively ascertainable statements, conduct, conditions, or events is admissible to impeach a verdict. (Evid. Code, § 1150, subd. (a); *In re Hamilton* (1999) 20 Cal.4th 273, 294 [84 Cal.Rptr.2d 403, 975 P.2d 600].) Juror declarations are admissible to the extent that they describe overt

---

[7] "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined." (Evid. Code, § 1150, subd. (a).)

acts constituting jury misconduct, but they are inadmissible to the extent that they describe the effect of any event on a juror's subjective reasoning process. (*In re Stankewitz* (1985) 40 Cal.3d 391, 398 [220 Cal.Rptr. 382, 708 P.2d 1260].) Accordingly, juror declarations are inadmissible to the extent that they purport to describe the jurors' understanding of the instructions or how they arrived at their verdict. (*People v. Dillon* (2009) 174 Cal.App.4th 1367, 1384, fn. 9 [95 Cal.Rptr.3d 449]; *Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1684 [12 Cal.Rptr.2d 279] (*Mesecher*).)

The trial court here, to a large degree, based its determination that the jury was misled by the special verdict question and that its failure to provide proper guidance in response to the jury's question was prejudicial on statements in two juror declarations.

Juror Fox declared:

"During the deliberations of this case by myself and the other jurors, an issue arose with respect to the meaning of the term 'potential risks' as used in the first four questions of the Special Verdict Form. Many of the jurors in the majority made statements that just driving a car is dangerous and riding a bike is dangerous and presents a risk. These jurors verbally expressed that they understood 'potential risks' to include any risks associated with driving a vehicle. I believed their understanding of the term was wrong, so I formulated the first question to the court. . . . I believed and verbally advocated for the position that the term 'potential risks' meant the particular risk of the occupant's head striking the ground during a rollover.

". . . After we received the court's response to the first question, the jurors in the majority verbally argued that the term 'potential risks' must be interpreted broadly instead of the particular risk of a head strike in a rollover which I had advocated. The jury's vote changed after the court's response to the question, with a consensus of nine now being reached to answer 'yes' to Special Verdict Form question number three."

Juror Porter declared: "During the deliberation of the jury there was significant verbal discussion regarding the meaning of the term 'potential risks' as used in the first four questions of the Special Verdict Form. I understood this to mean the specific risk of striking one's head on the ground during a rollover of the car. But several of the jurors in the majority expressed a broader definition of the term by making verbal arguments that just driving itself is unsafe and that potential risks means the risk of getting into an accident, including the risk of the car rolling over."

The trial court cited and quoted part of this quoted language in its order granting a new trial, as stated, *ante*. The portions cited by the trial court

describe some of the jurors' purported understanding of the words "potential risks" as used in the special verdict form. Those portions of the declarations reflect the jurors' subjective reasoning processes and therefore are inadmissible. (Evid. Code, § 1150, subd. (a).)

### c. *The Record Does Not Justify a New Trial Based on the Failure to Clarify the Special Verdict Question*

An order granting a new trial ordinarily is entitled to great deference, as we have stated, but such deference is inappropriate if the order is based in substantial part on inadmissible evidence. We conclude that the trial court's reliance on the cited portions of the juror declarations was neither insignificant nor harmless. Moreover, we believe that, excluding the inadmissible portions of the juror declarations, the record compels the conclusion that the special verdict form was not misleading and did not confuse the jury.

The purported confusion concerned whether "potential risks" as used in the special verdict form referred specifically to the particular risk of head-to-ground contact in a rollover accident or referred more generally to all potential risks. Question No. 1 asked whether the Z3 had "potential risks that were known or knowable" through the use of available scientific knowledge. Question No. 2 asked whether "the potential risks" presented a substantial danger to users of the Z3. Question No. 3 asked, "Would ordinary consumers have recognized the potential risks." The jury answered "yes" to all three questions.

In our view, the plain language of these questions clearly conveyed to the jury that "the potential risks" in questions Nos. 2 and 3 referred to the same "potential risks" initially referenced in question No. 1. The jury's affirmative response to question No. 3 indicates that the jury found that ordinary consumers recognized all of "the potential risks," including the risk of head-to-ground contact in a rollover accident, regardless of the precise scope of the term "potential risks." Accordingly, we conclude that the failure to clarify the special verdict question cannot justify a new trial.

### 4. *We Cannot Affirm the New Trial Order Based on Another Ground*

#### a. *Legal Framework*

We must affirm the order granting a new trial if a new trial should have been granted on any ground stated in the motion, regardless of the trial court's stated reasons, except that we cannot affirm the order based on insufficiency of the evidence or excessive or inadequate damages because the order did not specify those grounds. (Code Civ. Proc., § 657.) A ground was

"stated in the motion" (*ibid.*) for purposes of the statute if the ground was listed in the notice of intention to move for a new trial, regardless of whether the ground was stated in the memorandum of points and authorities supporting the motion. (Code Civ. Proc., § 659, final par.; *Hand Electronics, Inc. v. Snowline Joint Unified School Dist.* (1994) 21 Cal.App.4th 862, 870–871 [26 Cal.Rptr.2d 446].)

If the trial court failed to timely specify the grounds for a new trial order or failed to timely specify the reasons for granting a new trial on those grounds, the moving party bears the burden on appeal to show that the order should be affirmed on a ground stated in the motion. (*Oakland Raiders, supra,* 41 Cal.4th at pp. 640–641; *Sanchez-Corea v. Bank of America* (1985) 38 Cal.3d 892, 900, 906 [215 Cal.Rptr. 679, 701 P.2d 826]; *Thompson v. Friendly Hills Regional Medical Center* (1999) 71 Cal.App.4th 544, 550 [84 Cal.Rptr.2d 51].) Similarly, if the trial court specified the grounds and reasons for granting a new trial but the order cannot be affirmed on those grounds or for those reasons, as here, the moving party bears the burden on appeal to show that the order should be affirmed on another ground stated in the motion or for reasons other than those specified by the trial court. (*Gaskill v. Pacific Hosp. of Long Beach* (1969) 272 Cal.App.2d 128, 130–132 [77 Cal.Rptr. 373]; see *Meiner v. Ford Motor Co.* (1971) 17 Cal.App.3d 127, 144 [94 Cal.Rptr. 702].) Accordingly, we will consider only the grounds and reasons asserted by Plaintiffs on appeal. As we will explain, we conclude that the trial court properly denied the new trial motion on those other grounds.

### b. *Juror Misconduct*

Plaintiffs contend some of the jurors held Bell to a subjective standard of knowledge based on his education and intelligence rather than the objective standard of an ordinary consumer. Three jurors declared that some jurors stated during deliberations that Bell was educated and intelligent, that he should have known of the potential risks, and "that they understood the term ordinary consumers to mean persons such as themselves and Mr. Bell, who are knowledgeable [and] intelligent." Plaintiffs contend this shows that the jurors failed to follow the instructions and committed misconduct.

An express agreement not to follow the instructions "or extensive discussion evidencing an implied agreement to that effect" would constitute juror misconduct. (*Krouse v. Graham* (1977) 19 Cal.3d 59, 81 [137 Cal.Rptr. 863, 562 P.2d 1022].) There is no evidence of such an express agreement here, and we do not believe that the declarations show an implied agreement. Rather, the cited statements in the juror declarations purport to reflect other jurors' understanding and application of the instructions, and therefore are

inadmissible. (*Mesecher, supra,* 9 Cal.App.4th at p. 1684.) We conclude that the evidence does not support a new trial based on failure to follow the instructions.

Juror declarations submitted by Plaintiffs also stated that some jurors repeatedly referred to Bell's comparative fault before the jury had reached that question in the special verdict form. Plaintiffs contend this evidence shows that some jurors committed misconduct by failing to follow the court's instruction to answer the special verdict questions in order and by expressing a firm conviction at the beginning of deliberations and refusing to consider other points of view.

The court instructed the jury to answer the special verdict questions in order but did not instruct the jury to limit its discussion of the pertinent issues in any manner or to discuss some of those issues only after discussing others. We conclude that there was no jury misconduct in this regard. Moreover, the jurors' purported statements concerning Bell's comparative negligence might have shown their conviction at the time but did not show a refusal to deliberate or constitute juror misconduct.

Juror declarations submitted by Plaintiffs also stated that another juror, Letitia Armas, "changed her vote to side with the majority and break the deadlocked jury" and stated at that time "that she felt intimidated by [another juror's] comments to her." The juror declarations did not quote or describe the other juror's comments. This statement attributed to Juror Armas reflected her subjective reasoning process and therefore was inadmissible. (*Hutchinson, supra,* 71 Cal.2d at pp. 349–350.)

Plaintiffs also contend a juror committed misconduct by misrepresenting the jury instructions to other jurors. Juror declarations submitted by Plaintiffs stated that Juror Rebecca Morris "stated to the jury that the instructions required the Bells to prove that there was another car that would have saved Mr. Bell from his injuries in order to prevail." Juror Morris declared that she never made that statement and that the instructions were available for all jurors to review. In our view, the purported statement by Juror Morris reflected her understanding of the instructions and therefore was inadmissible. (*Mesecher, supra,* 9 Cal.App.4th at p. 1684.)

c. *Awareness of the Potential Risks*

Defendants presented testimony by two engineers. Jurgen Kubler partici-pated in the construction of the prototype that became the Z3. He testified that, at the time, he could see no danger to the occupants of the car in the event of a rollover. Lothar Heiner designed rollover protection systems for

possible use in the Z3. He testified that it was not his responsibility to determine whether the vehicle was safe. He stated further: "Yes, we inspected it, yes, but that did not mean that you have that which determined that this vehicle is so safe that you do not need rollover protection. You cannot see it." Plaintiffs contend this testimony shows that the potential risks were not apparent to the engineers and argue that if the potential risks were not apparent to automotive experts, they could not have been apparent to an ordinary consumer. We disagree.

█ The consumer expectations test focuses on the safety expectations of an ordinary consumer rather than those of an expert. (*Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 126–127 [184 Cal.Rptr. 891, 649 P.2d 224].) "[W]here the minimum safety of a product is within the common knowledge of lay jurors, expert witnesses may not be used to demonstrate what an ordinary consumer would or should expect." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 567 [34 Cal.Rptr.2d 607, 882 P.2d 298].) Plaintiffs do not contend the minimum safety of the Z3 was not within the common knowledge of lay jurors. We conclude that the jury was entitled to disregard the testimony by Defendants' engineers in concluding that the potential risks would have been apparent to an ordinary consumer.

### d. *Defective Verdict*

The completed special verdict form signed by the jury foreperson stated that 10 jurors voted "yes" to question No. 3 and two voted "no."[8] The reporter's transcript indicates that when the court polled the jury on this question, only eight jurors answered "yes," and four answered "no." A minute order, in contrast, states that when polled by the court nine jurors answered "yes," and three answered "no." After the polling was completed, the court thanked and excused the jurors. Counsel did not challenge the verdict at that time. Plaintiffs contend the polling indicates that the jury failed to reach a verdict on question No. 3.

█ A special verdict is sufficient if any nine of the 12 jurors are in agreement. (Cal. Const., art. I, § 16; *Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 255 [92 Cal.Rptr.3d 862, 206 P.3d 403] (*Keener*).) █ A party may require the jury to be polled as to the verdict. (Code Civ. Proc., § 618.) "If upon inquiry or polling, more than one-fourth of the jurors disagree thereto, the jury must be sent out again, but if no disagreement is expressed, the verdict is complete and the jury discharged from the case." (*Ibid.*)

---

[8] Special verdict question No. 3 stated, "Would ordinary consumers have recognized the potential risks?"

"The polling process is designed to reveal mistakes in the written verdict, or to show 'that one or more jurors acceded to a verdict in the jury room but was unwilling to stand by it in open court.' [Citation.]" (*Keener, supra,* 46 Cal.4th at p. 256.) A juror is entitled to change his or her vote at the time of polling, as long as the juror does not do so because he or she misunderstood the legal effect of the verdict. (*Ibid.*)

Any challenge to the verdict based on the polling must be asserted before the jury is discharged if the purported defect is apparent and could be corrected, or else the challenge is forfeited. (*Keener, supra,* 46 Cal.4th at pp. 262–268.) "Failure to object to a verdict before the discharge of a jury and to request clarification or further deliberation precludes a party from later questioning the validity of that verdict if the alleged defect was apparent at the time the verdict was rendered and could have been corrected." (*Henrioulle v. Marin Ventures, Inc.* (1978) 20 Cal.3d 512, 521 [143 Cal.Rptr. 247, 573 P.2d 465].) Further polling of the jury and sending the jury out for further deliberations are means by which some defects can be corrected. (*Keener, supra,* 46 Cal.4th at p. 270; *Henrioulle, supra,* 20 Cal.3d at p. 522.) We conclude that the purported defect in the verdict was apparent at the time of polling and could have been corrected either by polling the jury a second time or by sending the jury out for further deliberations. Plaintiffs forfeited their challenge to the verdict by failing to assert it before the jury was discharged.

### e. *Modification of CACI No. 1204*

A product is defective in design for purposes of tort liability if the benefits of the design do not outweigh the risk of danger inherent in the design. (*Barker v. Lull Engineering Co.* (1978) 20 Cal.3d 413, 432 [143 Cal.Rptr. 225, 573 P.2d 443].) This is known as the risk-benefit test. (*Id.* at p. 418.) A product that meets consumer expectations may be defective under the risk-benefit test "if through hindsight the jury determines that the product's design embodies 'excessive preventable danger,' or, in other words, if the jury finds that the risk of danger inherent in the challenged design outweighs the benefits of such design. [Citations.]" (*Id.* at p. 430.) In applying the risk-benefit test, "a jury may consider, among other relevant factors, the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design." (*Id.* at p. 431; accord, *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 479 [110 Cal.Rptr.2d 370, 28 P.3d 116].)

Plaintiffs requested that the trial court instruct the jury with CACI No. 1204, listing the factors for the jury to consider in deciding whether the

benefits of the design outweighed the risks of the design. The listed factors included: "(a) The gravity of the potential harm resulting from the use of the [*product*]; [¶] (b) The likelihood that this harm would occur; [¶] (c) The feasibility of an alternative design at the time of manufacture; [¶] (d) The cost of an alternative design; [and] [¶] (e) The disadvantages of an alternative design; [and] [¶] (f) [*Other relevant factor(s)*]." (*Ibid.*) Defendants proposed to modify the instructions by including "aesthetics" as another relevant factor. Plaintiffs objected. The court approved the requested modification. In light of the ruling, Plaintiffs withdrew the requested instruction.

Plaintiffs contend aesthetics is not a proper consideration in the risk-benefit analysis, and the trial court's ruling to the contrary was an "[e]rror in law" (Code Civ. Proc., § 657, subd. 7). We disagree. In our view, much of the perceived benefit of a car lies in its appearance. A car is not a strictly utilitarian product. We believe that a jury properly may consider aesthetics in balancing the benefits of a challenged design against the risk of danger inherent in the design. (See 2A American Law of Products Liability (3d ed. 2007) Design Defect as Basis for Liability, § 28:22, pp. 38–39 [listing "the appearance and aesthetics of the product" among the benefits that may be considered under the risk-benefit test]; Rest.3d Torts, Products Liability, § 2, com. f, p. 23 [stating that the relative advantages and disadvantages of the challenged design and an alternative design may depend on several factors, including aesthetics].) Although consideration of the disadvantages of an alternative design (CACI No. 1204, factor (e)) would encompass any impact on aesthetics, we conclude that there was no error in the trial court's approval of the modification listing aesthetics as a relevant factor.

### 5. *Plaintiffs' Appeal from the Denial of Their Motion for Judgment Notwithstanding the Verdict Is Abandoned*

Plaintiffs do not challenge the denial of their motion for judgment notwithstanding the verdict in their opening brief on appeal. We therefore deem the appeal from that order as abandoned and will dismiss the appeal from the order. (*Robinson v. Harrington* (1961) 195 Cal.App.2d 126, 127–128 [15 Cal.Rptr. 322].)

### 6. *Plaintiffs Have Shown No Prejudicial Error in the Judgment*

Plaintiffs' opening brief on appeal is limited to arguing that the order granting a new trial should be affirmed either on the grounds specified by the trial court or on other grounds stated in the new trial motion. Plaintiffs do not challenge any other ruling by the trial court apart from the rulings challenged in their new trial motion. Because we must affirm the new trial order if the trial court should have granted a new trial on any of the grounds stated in the

motion, with the exceptions we have noted (Code Civ. Proc., § 657), all of the issues raised in Plaintiffs' opening brief are encompassed within Defendants' appeal from the new trial motion. Plaintiffs need not have appealed from the judgment to argue those issues.

To the extent that the grounds asserted in the new trial motion could justify a reversal of the judgment, we conclude that Plaintiffs have shown no reversible error on those grounds for the same reasons that they have not shown that the new trial motion should have been granted on those grounds. We therefore will affirm the judgment.

### *DISPOSITION*

The order granting a new trial is reversed, and the judgment is affirmed. Plaintiffs' appeal from the denial of the motion for judgment notwithstanding the verdict is dismissed. Defendants are entitled to recover their costs on appeal.

Klein, P. J., and Kitching, J., concurred.